**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES R. DRIGGERS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Action No.: 19-850** |
| | * | |
| **CALIBER HOME LOANS, INC., and** | * | |
| | * | |
| **FAY SERVICING, LLC.** | * | |
| | | |
| **Defendants.** | | |

## COMPLAINT

**COMES NOW** James R. Driggers, as Plaintiff in this proceeding and against the above-referenced Defendants as follows:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), and 12 U.S.C. § 2617.

2.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claims herein.

3.  The venue is proper here because the events giving rise to the Plaintiff's cause of action occurred in this district.

## THE PARTIES

4.  Plaintiff, James R. Driggers (from now on referred to as "Plaintiff" or "Driggers"), is over the age of nineteen years and a resident citizen of Baldwin County, Alabama.

5.  Defendant, Fay Servicing LLC., (in the future referred to as "Fay" or collectively as "Defendants"), is a foreign company doing business in the State of Alabama. Fay is a mortgage

loan server.

6.    Defendant, Caliber Home Loans, Inc., (from now on referred to as "Caliber" or collectively as "Defendants") is a foreign corporation doing business in the State of Alabama. Caliber is a mortgage loan servicer.

## HISTORY AND FACTUAL ALLEGATIONS

7.    Mr. Driggers' loan has a long history of problems. His loan has been serviced by several different loan servicers, and the ownership of the loan has changed several times.

8.    On April 13, 2007, Driggers executed a real estate mortgage loan with Beneficial Financial 1, Inc. ("Beneficial") for $125,996.80.

9.    Originally the loan serviced was serviced and, on information and belief, was owned by Beneficial.

10.    The loan called for 240 payments of $1,097.42, resulting in an interest rate of 9.229%.

11.    The loan was secured by the Plaintiff's principal residence and is, therefore, a consumer debt.

12.    During 2010 Driggers was unable to work for a period and got behind on his mortgage payments and Beneficial foreclosed on his home on April 9, 2010.

13.    Driggers, was unaware of the foreclosure until Beneficial filed an ejectment suit against him in the Circuit Court of Baldwin County, Alabama.

14.    Shortly after being served, Mr. Driggers filed an answer and counterclaim alleging that the foreclosure was void because he did not get proper notice.

15.    On August 19, 2010, Driggers filed for relief under Chapter 13 of Title 11 U.S. Code.

16.     Driggers and Beneficial eventually reached agreed on a settlement during August of 2011.

17.     The settlement called for the setting aside of the foreclosure, and the loan was modified by Beneficial as follows:

a.      Interest rate fixed at **5.25%**
b.      A new term of **360 months**
c.      This will make their monthly principal and interest payment equal to **$670.61.**
d.      The principal balance of the loan is $121,442.92.
e.      The delinquent accrued interest totals approximately $19,690.
f.      The following fees and costs will remain on the loan, property taxes ($3,479.30) and Lender Placed Insurance ($2,028.99).

18.     Under the modification, the term of the loan was extended to 360 months at a fixed rate of 5.25%, a monthly payment of $670.61 with a new principal balance of $121,442.92.

19.     The modification also required Driggers to eventually pay approximately $19,690 in accrued interest, $3,479.30 for accrued property taxes and $2,028.00 for force-placed insurance.

20.      A motion to approve the settlement was filed in the Bankruptcy Court on September 14, 2011.

21.     The Bankruptcy Court subsequently approved on October 7, 2011.

22.     Driggers' bankruptcy case was converted to Chapter 7 on June 6, 2012.

23.     Driggers reaffirmed the debt with Beneficial on September 21, 2012, and received a Chapter 7 discharge on December 7, 2012.

24.     This should have been the end of this story, but Beneficial breached the settlement agreement by failing to have the foreclosure set aside. Driggers learned of this when he tried to pay his 2012 property taxes.

3

25.    After much correspondence with Beneficial and its foreclosure counsel, to no avail, Driggers filed a motion to enforce his settlement agreement. The motion was granted by the Baldwin County Circuit Court on June 3, 2014.

26.    In the meantime, Beneficial had failed to pay the 2012 property taxes, and the property was purchased at a tax sale by Investa Services, LLC.

27.    According to the Baldwin County tax records, Beneficial paid the 2013 and 2014 taxes, but the property was not redeemed until April 21, 2014.

28.    The redemption amount was, on information and belief, $23,556.02.

29.    On or about May 1, 2015, Driggers' loan was sold to LSF9 Master Participation Trust, and on June 1, 2015 servicing of the loan was transferred to Caliber.

30.    Caliber's principal business is mortgage loan servicing.

31.    At the time of the servicing transfer, the loan was considered by Caliber to be in default.

32.    A dispute arose between Driggers, Beneficial, and Caliber over, among other things, the balance owing his loan.

33.    It was subsequently determined and agreed that the total balance of the loan, including all accrued charges, as of September 8, 2016, was $112,437.69.

34.    During January, February, and March of 2018, however, Caliber claimed that Driggers was in default, threatened foreclosure, but finally offered him a modification on March 19, 2018.

35.    The modification lowered the interest rate to 4% and the monthly payment to $604.08, but it also contained amounts that Driggers did not owe in breach of the parties' September 19, 2016 agreement.

4

36.     Section two of the 2018 modification agreement stated in part:

Modified Principal Balance: On the Modification Effective Date, the unpaid principal balance payable under the Note is $110,800.99 (the "Unpaid Principal Balance").

Deferred Amounts: We have agreed to defer your obligation to pay the following amounts (the "Deferred Amounts"):

  Deferred Principal: $0.00

  Deferred Amounts Other Than Principal: $30,488.26

37.     The "Deferred Amounts Other Than Principal" were not owing because they were included in the previous, 2016, agreement between Driggers, Beneficial, and Caliber.

38.     Driggers accepted the modification terms under duress and in order to avoid foreclosure.

39.     Caliber breached its earlier agreement with Driggers by the inclusion of the $30,488.26 in the modification.

40.     Caliber's inclusion of amounts not owing in the 2018 modification was either negligent or intentional.

41.     Each month Caliber would send Driggers a statement attempting to collect amounts that were not owing.

42.     The Caliber statements also included amounts for property taxes even though Mr. had notified Caliber that he was exempt from paying property taxes.

43.     Driggers sent a Notice of Error ("NOE") to Caliber on November 5, 2018, stating that the inclusion of the $30,488.26 was an error and asking that it be corrected. Also, Driggers complained that his payments were not being correctly applied to his loan and asked his account be adjusted.

44.     Caliber was required by 12 CFR §1024.35(d) to acknowledge receipt of the NOE within five days but failed to do so.

45.    Driggers sent another NOE on November 13, 2018, stating that the inclusion of the $30,488.26 was an error and again asked that it be corrected.

46.    Also, Driggers complained again that his payments were not being properly applied to his loan and asked that his account be corrected.

47.    Caliber also failed to respond on this occasion.

48.    On or about October 31, 2018 servicing was transferred to Fay.

49.    At the time of this servicing transfer, Mr. Driggers' loan was considered by Fay to be in default.

50.    Fay is a mortgage loan servicer. The term "servicer" means the person responsible for servicing of a loan.

51.    The principal business of Fay is mortgage loan servicing.

52.    The term "servicing" means receiving [collecting] any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

53.    At all relevant times, Fay was servicing the Plaintiff's loan on behalf of the actual owner of the loan.

54.    A dispute has arisen between Driggers and Fay regarding, among other things, the status of the account and the balance owing on his loan.

55.    Driggers sent an NOE to Fay on November 13, 2018, and used the following address:

Fay Servicing
P.O. Box 809441
Chicago, IL 60680

6

56.     The above address was prominent on Fay's website and "**Inquiries and Other Written Correspondence**" was written above it.

57.     Fay did not respond to the NOE, so on January 16, 2019 Driggers sent an NOE to:

>       Fay Servicing, LLC
>       901 S. 2nd St. Suite 201
>       Springfield, IL 62704

58.     This address was on Fay's website, and **"Notices of Error or Information Requests"** was written above it.

59.     Again, Fay did not respond, and Driggers sent another NOE on February 18, 2019, to every address listed on Fay's website.

60.     Fay finally acknowledged receipt of this NOE on February 27, 2019, and stated that it would respond in 30 days.

61.     Fay responded on March 11, 2019, and explained one question that Driggers had about his statement but insisted that the "Deferred Amounts" was correct based on records it received from Caliber.

62.     In the NOE Driggers specifically requested an accounting of the "Deferred Amounts" but he did not receive one.

63.     The NOE also requested a transaction history. Fay sent a transaction history, but it was incomplete and mostly illegible.

64.     In each NOE Driggers complained that his payments were not being applied properly and requested information, including payment history and accounting.

65.     Fay negligently failed to properly investigate and failed to consult its own records. As a result Plaintiff's account was not corrected.

7

66.     Driggers also had numerous conversations with "Brad" his "account manager" at Fay.

67.     One of the issues he discussed with Brad was the fact that he was exempt from paying property taxes and Fay was collecting $437.80 per year or $36.50 per month for the payment of property taxes.

68.      Driggers emailed Brad a statement on from the Baldwin County Revenue Commissioner indicating that he is tax-exempt on March 21, 2019, but the escrow for taxes continues.

69.     Fay ignored the information supplied by Driggers and continues to bill him for taxes that are not owing.

## COUNT I
## NEGLIGENCE

70.     The allegations in the above paragraphs are hereby asserted and realleged by reference as if fully and completely set out herein.

71.     Fay and Caliber were grossly negligent in their servicing of Plaintiff's mortgage and their failure to correctly investigate and correct the errors complained about by Driggers. Their negligence also includes, but is not limited to, failing to review the file as received from Beneficial and accurately account for the payments made by Plaintiff. These actions constitute negligence, and Plaintiff has suffered damage as a proximate result thereof.

**WHEREFORE, THE PREMISES CONSIDERED,** Plaintiff requests that the Court enter judgment in his favor against Caliber and Fay awarding compensatory damages, including

damages mental anguish and emotional distress, as well as punitive damages, attorney's fees, and costs.

## COUNT II
## WANTONNESS

72.      The allegations in the above paragraphs are now asserted and realleged by reference as if fully and completely set out herein.

73.      Caliber and Fay have been wanton while servicing Plaintiff's mortgage.   Their wantonness includes, but is not limited to, the failure to accurately account for the payments made by Plaintiff, improperly applying funds and imposing charges which were known or should have been known were incorrect.   These actions constitute wantonness, and Plaintiff has suffered damage as a proximate result thereof.

**WHEREFORE, THE PREMISES CONSIDERED,** after due proceedings, Plaintiff requests that the Court enter judgment in his favor against Defendants for compensatory damages, including mental anguish and emotional distress, as well as, attorney's fees, punitive damages, and costs.

## COUNT III
## (VIOLATIONS OF RESPA)

74.      Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

75.      Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) grants borrowers the right to submit a "qualified written request" ("QWR") to his loan servicer requesting information and documents about the servicing of his loan. That provision also grants borrowers the right to submit a notice of servicing error ("NOE"), identifying perceived errors committed by the servicer.  See 12 U.S.C. § 2605(e).

76.     A QWR and NOE must sufficiently identify the borrower, the account, and the perceived servicing error.  *Id*.

77.     Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Financial Protection Bureau recently exercised its authority under RESPA and clarified the borrower's rights to have errors corrected. See 12 C.F.R. § 1024.35.

78.     Under Section 2605(e) and the implementing regulations ("Reg. X"), including the recent amendments, servicers must take the following actions upon receipt of a QWR and/or NOE:

➢     Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;

➢     Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide the borrower with a written explanation of the corrections made, the effective date of the correction and contact information for further assistance;

➢     If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance;  either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and

> If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

79. Drigger's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

80. Each defendant is a "servicer" with respect to Driggers' loan as that term is defined in 12 U.S.C. § 2605(i)(2).

81. Plaintiff's letters each defendant constituted a "qualified written request" and a "notice of servicing error" within the meaning of 12 U.S.C. § 2605(e) and Regulation X.

82. Defendants have violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWRs and NOEs as required under that section and Reg. X.  Specifically, Defendants failed to conduct any reasonable investigation of the errors described in Plaintiff's letters and failed to correct Plaintiff's account to reflect terms of Beneficial and Driggers' modification Agreement.

83. Defendants also violated 12 U.S.C. § 2605(k) in at least the following ways:

> Failing to take timely action to respond to Plaintiff's notice of servicing error;

> Failing to comply with the requirements set out in Reg. X regarding responding to a QWR and an NOE; and

> Failing to correct Drigger's account.

84. Plaintiff has suffered actual damages as a proximate result of Defendants' failures to comply with Section 2605(e).

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendants for violation of the RESPA, awarding the following relief:

11

a.      Statutory and actual damages for each violation as provided in 12 U.S.C. § 2605(f);

b.      Reasonable attorney's fees, and costs expended in this proceeding; and

c.      Such other and further relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendants for compensatory damages, actual damages, and attorney's fees as allowed by 12 U.S.C. § 2605.

<u>**COUNT IV**</u>
**(FDCPA VIOLATIONS)**

59.      The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

60.      This is a claim against Defendants for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Defendants have attempted to collect a debt that is owed to another, and they obtained the debt and servicing rights after they considered it to be in default.

59.      Each Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

60.      With in the last 12 months next preceding the filing of this complaint, Defendants have attempted to collect amounts from Driggers that were not owing.

61.      The debt which Defendants attempted to collect from Plaintiff is a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

62.      Defendants have violated the FDCPA in connection with its collection attempts against Plaintiff.   Defendants' violations include, but are not limited to, the following:

a.      Attempting to collect amounts that not are owing and not authorized by any contract or permitted by law in violation of 15 U.S.C. § 1692f(1);

b.      Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e.

63.      The actions were taken by Defendants in violation violate of the FDCPA occurred within one year of the filing prior to this action.

64.      As a proximate result of Defendants' FDCPA violations, Plaintiff has suffered actual damages and loss of money.

65.      As a result of its violations of the FDCPA, Defendants are liable to Plaintiff for compensatory damages, statutory damages, costs, and attorneys fees.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants for the following:

a.      Actual damages;

b.      Statutory damages pursuant to 15 U.S.C. 1692k;

c.      Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k;

d.      Such other and further relief as this Court deems just and proper, the premises considered.

**Respectfully** submitted on this the 18th day of October 2019.

/s/Earl P. Underwood, Jr._____
EARL P. UNDERWOOD, JR.
Attorney for Plaintiff

**OF COUNSEL:**
**UNDERWOOD & RIEMER, P.C.**
**21 S Section Street**
**Fairhope, Alabama 36532**
**Phone:   251.990.5558**
**Email: epunderwood@alalaw.com**

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

*/s/Earl P. Underwood, Jr*
**Earl P. Underwood, Jr.**