IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES R. DRIGGERS,** | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * |
| | * |
| **CALIBER HOME LOANS, INC.,** | * Civil Action No.: 19-850-JB-B |
| **FAY SERVICING, LLC., and** | * |
| **CITIBANK N.A. AS TRUSTEE FOR** | * |
| **CMLTI ASSET TRUST** | |
| | |
| Defendants. | |

## AMENDED COMPLAINT

**COMES NOW** James R. Driggers, as Plaintiff in this proceeding and against the above-referenced Defendants as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), and 12 U.S.C. § 2617.

2. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claims herein.

3. Venue is proper here because the events giving rise to the Plaintiff's cause of action occurred in this district.

## THE PARTIES

4. Plaintiff, James R. Driggers (from now on referred to as "Plaintiff" or "Driggers"), is over the age of nineteen years and a resident citizen of Baldwin County, Alabama.

5. Defendant, Fay Servicing LLC., (in the future referred to as "Fay" or collectively

as "Servicer Defendants"), is a foreign company doing business in the State of Alabama. Fay is a mortgage loan server.

6. Defendant, Caliber Home Loans, Inc., (from now on referred to as "Caliber" or collectively as "Servicer Defendants") is a foreign corporation doing business in the State of Alabama. Caliber is a mortgage loan servicer.

7. Citibank, N.A., as trustee for CMLTI Asset Trust ("Citibank"), is the owner of the Plaintiff's loan.

## HISTORY AND FACTUAL ALLEGATIONS

8. Mr. Driggers' loan has a long history of servicing problems. Several different loan servicers have serviced his mortgage, and the ownership of the loan has changed several times.

9. On April 13, 2007, Driggers executed a real estate mortgage loan with Beneficial Alabama Inc. ("Beneficial") for $125,996.80.

10. Originally, Plaintiff's loan serviced was serviced and, on information and belief, was owned by Beneficial.

11. The Plaintiff's mortgage is presently securitized, meaning it is held by an "investor," in this case, Citibank, which pooled the loan with many other loans for investment purposes. Over 60% of all mortgages in the U.S. are held in this way. These companies, such who hold securitized mortgages, typically hire separate companies – mortgage servicers - to handle the day-to-day functions of the mortgage, including collecting and applying payments, managing the escrow account, among other things. This means that Borrower deals exclusively with mortgage servicers, not the actual owners of his loan, and depends on the abilities and competence of the servicer to properly handle payments, escrow accounts, pay-offs, transfers, and all other aspects of the mortgage loan.

12. At the same time, Borrowers have no say in whether servicing will be transferred or to which company. Borrowers do not select or hire their servicers. Borrowers also cannot fire their mortgage servicer, no matter how abusive its practices or how dissatisfied the borrower becomes. Borrowers also have no control over the transfer of their loan from one servicer to another. Borrowers are not consulted or even apprised of any pending servicing transfer. The only notice provided to a borrower occurs just before or just after the actual servicing transfer date. By that time, the new servicer has already been selected. The exact transfer date is the last step of the transfer process and happens long after the decision to transfer is made. Thus, even though the choice of servicer fundamentally impacts that the experience of a borrower regarding all aspects of his mortgage loan, that same borrower has no input on when, whether or to which company his loan will be transferred.

13. Plaintiff's loan initially called for 240 payments of $1,097.42, resulting in an interest rate of 9.229%.

14. The loan was secured by the Plaintiff's principal residence and is, therefore, a consumer debt.

15. The mortgage allows recovery of certain costs "reasonable or appropriate" to protect the lender's interest in the property, but only in certain limited circumstances. Those circumstances include 1) after a default; 2) during a legal proceeding, such as bankruptcy; or 3) if the property is abandoned. The costs that can be incurred or collected under those circumstances include "reasonable attorneys' fees" related to the protection of the lender's interest in the property and its rights under the mortgage. However, on information and belief, such costs are not recoverable under the Note, where the debt has not been accelerated.

16. Under the terms of the mortgage, each payment must be applied in the following order: first, to interest due under the Note; second, to principal payment under the Note; third, to the amount required to be paid into the escrow account for taxes and insurance; and fourth, to any other charges, including late fees or additional default-related costs.

17. During 2010, Driggers was unable to work for a period, got behind on his mortgage payments and Beneficial foreclosed on his home on April 9, 2010.

18. Driggers, was unaware of the foreclosure until Beneficial filed an ejectment suit against him in the Circuit Court of Baldwin County, Alabama.

19. Shortly after being served, Mr. Driggers filed an answer and counterclaim alleging that the foreclosure was void because he did not get proper notice.

20. Also, on August 19, 2010, Driggers filed for relief under Chapter 13 of Title 11 U.S. Code.

21. Driggers and Beneficial eventually reached agreed on a settlement during August of 2011.

22. The settlement called for the setting aside of the foreclosure, and the loan was modified by Beneficial as follows:

  a. Interest rate fixed at **5.25%**
  b. A new term of **360 months**
  c. This will make their monthly principal and interest payment equal to **$670.61.**
  d. The principal balance of the loan is $121,442.92.
  e. The delinquent accrued interest totals approximately $19,690.
  f. The following fees and costs will remain on the loan, property taxes ($3,479.30) and Lender Placed Insurance ($2,028.99).

23. Under the modification, the term of the loan was extended to 360 months at a fixed rate of 5.25%, a monthly payment of $670.61 with a new principal balance of $121,442.92.

24. The modification also required Driggers to eventually pay approximately $19,690 in accrued interest, $3,479.30 for accrued property taxes, and $2,028.00 for force-placed insurance.

25. A motion to approve the settlement was filed in the Bankruptcy Court on September 14, 2011.

26. The Bankruptcy Court subsequently approved the settlement on October 7, 2011.

27. Driggers' bankruptcy case was converted to Chapter 7 on June 6, 2012.

28. Driggers reaffirmed the debt with Beneficial on September 21, 2012, and received a Chapter 7 discharge on December 7, 2012.

29. This should have been the end of this story, but Beneficial breached the settlement agreement by failing to have the foreclosure set aside. Driggers learned of this when he tried to pay his 2012 property taxes.

30. After much correspondence with Beneficial and its foreclosure counsel, to no avail, Driggers filed a motion to enforce his settlement agreement. The Baldwin County Circuit Court finally granted the motion on June 3, 2014.

31. In the meantime, Beneficial, the record owner of the property, failed to pay the 2012 property taxes, and the property was purchased at a tax sale by Investa Services, LLC.

32. According to the Baldwin County tax records, Beneficial paid the 2013 and 2014 taxes, but the property was not redeemed until April 21, 2014.

33. The redemption amount was, on information and belief, $23,556.02.

34. On or about May 1, 2015, Driggers' loan was sold to LSF9 Master Participation Trust, and on June 1, 2015, servicing of the loan was transferred to Caliber.

35. Caliber's principal business is mortgage loan servicing.

36. At the time of the servicing transfer, the loan was considered by Caliber to be in default.

37. A dispute arose between Driggers, Beneficial, and Caliber over, among other things, the balance owing his loan.

38. It was subsequently determined and agreed that the total balance of the loan, including all accrued charges, as of September 8, 2016, was $112,437.69.

39. During January, February, and March of 2018, however, Caliber breached the agreement, claimed that Driggers was in default, threatened foreclosure, but finally offered him a modification on March 19, 2018.

40. The modification lowered the interest rate to 4% and the monthly payment to $604.08, but it also contained amounts that Driggers did not owe in violation of the parties' September 19, 2016 agreement.

41. Section two of the 2018 modification agreement stated in part:

> Modified Principal Balance: On the Modification Effective Date, the unpaid principal balance payable under the Note is $110,800.99 (the "Unpaid Principal Balance").
>
> Deferred Amounts: We have agreed to defer your obligation to pay the following amounts (the "Deferred Amounts"):
>
>   Deferred Principal: $0.00
>   Deferred Amounts Other Than Principal: $30,488.26

42. The "Deferred Amounts Other Than Principal" were not owing because they were included in the previous, 2016, agreement between Driggers, Beneficial, and Caliber.

43. Driggers accepted the modification terms under duress and in order to avoid foreclosure.

44. Caliber breached its earlier agreement with Driggers by the inclusion of the $30,488.26 in the modification.

6

45.     Caliber's breach and inclusion of amounts not owing in the 2018 modification was either negligent or intentional.

46.     Each month Caliber would send Driggers a statement attempting to collect amounts that were not owing.

47.     The Caliber statements also included amounts for property taxes even though Mr. Driggers had notified Caliber numerous times that he was exempt from paying property taxes.

48.     Driggers sent a Notice of Error ("NOE") to Caliber on November 5, 2018, stating that the inclusion of the $30,488.26 was an error and asking that it be corrected. Also, Driggers complained that his payments were not being correctly applied to his loan and requested his account to be adjusted.

49.     Caliber was required by 12 CFR §1024.35(d) to acknowledge receipt of the NOE within five days but failed to do so.

50.     Driggers sent another NOE on November 13, 2018, stating that the inclusion of the $30,488.26 was an error and again asked that it be corrected.

51.     Also, Driggers complained again that his payments were not being correctly applied to his loan and asked that his account be corrected.

52.     Caliber also failed to respond on this occasion.

53.     None of the NOE's sent by Plaintiff to Caliber were returned as undeliverable by the postal service.

54.     Caliber's failure to timely acknowledge the NOE's was either negligent or intentional.

55.     On or about October 31, 2018, servicing was transferred to Fay.

56.     Ownership of Plaintiff's loan was transferred to Citibank on September 9, 2019.

7

57. At the time of this servicing transfer, and the transfer of ownership, Mr. Driggers' loan was considered by Fay and Citibank to be in default.

58. At the time of the servicing transfer, Driggers' loan was subject to the terms of his prior agreements with Beneficial and Caliber.

59. Fay is a mortgage loan servicer. The term "servicer" means the person responsible for servicing of a loan.

60. The principal business of Fay is mortgage loan servicing. At no time was Fay the owner of Driggers' loan.

61. The term "servicing" means receiving [collecting] any scheduled periodic payments from a borrower under the terms of any loan, including amounts for escrow accounts and making the payments of principal and interest and such other fees concerning the amounts received from the borrower as may be required according to the terms of the loan.

62. At all relevant times, Fay was servicing the Plaintiff's loan on behalf of the actual owner of the loan, Citibank.

63. A dispute has arisen between Driggers and Fay regarding, among other things, the status of the account and the balance owing on his loan.

64. Each Month Fay would send Plaintiff a statement for amounts that were not owing.

65. Driggers sent an NOE asking for an accounting and that his account be corrected to Fay on November 13, 2018, and used the following address:

>   Fay Servicing
>   P.O. Box 809441
>   Chicago, IL 60680

66. The above address was prominent on Fay's website, and **"Inquiries and Other Written Correspondence"** was written above it.

67. Fay did not respond to the NOE, so on January 16, 2019 Driggers sent an NOE to:

> Fay Servicing, LLC
> 901 S. 2nd St. Suite 201
> Springfield, IL 62704

68. This address was on Fay's website, and **"Notices of Error or Information Requests"** was written above it.

69. Again, Fay did not respond, and Driggers sent another NOE on February 18, 2019, to every address listed on Fay's website.

70. Fay was required by 12 CFR §1024.35(d) to acknowledge receipt of each NOE within five days but failed to do so.

71. Fay finally acknowledged receipt of this NOE on February 27, 2019, and stated that it would respond in 30 days.

72. Fay's Failure to timely and adequately to acknowledge Plaintiff's NOE's was either negligent or intentional.

73. Fay finally responded on March 11, 2019, and addressed one question that Driggers had about his statements but insisted that the "Deferred Amounts" was correct based on records it received from Caliber.

74. In the NOE, Driggers specifically requested an accounting of the "Deferred Amounts," but he did not receive one.

75. Upon receipt of the NOE, Fay was on notice that these "Deferred Amounts" were disputed.

76. The NOE also requested a transaction history. Fay sent a transaction history, but it was incomplete and mostly illegible.

77. In each NOE, Driggers complained that his payments were not being appropriately applied and requested information, including payment history and accounting.

78. Fay negligently failed to investigate appropriately and failed to consult its own records. As a result, Plaintiff's account was not corrected.

79. Driggers also had numerous conversations with "Brad" his "account manager" at Fay.

80. One of the issues he discussed with Brad was the fact that he was exempt from paying property taxes, and Fay was collecting $437.80 per year or $36.50 per month for the payment of property taxes that were not owing.

81. Driggers emailed Brad a statement on from the Baldwin County Revenue Commissioner indicating that he is tax-exempt on March 21, 2019, but the escrow for taxes continues.

82. Fay ignored the information supplied by Driggers and continues to bill him for taxes and other amounts that are not owing.

## COUNT I
## (VIOLATIONS OF RESPA)

83. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

84. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) grants borrowers the right to submit a "Qualified Written Request" ("QWR") to his loan servicer requesting information and documents about the servicing of his loan. That provision also

grants borrowers the right to submit a Notice of Servicing Error ("NOE"), identifying perceived errors committed by the servicer. See 12 U.S.C. § 2605(e).

85. A QWR and NOE must sufficiently identify the borrower, the account, and the perceived servicing error. *Id*.

86. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the Federal Consumer Financial Protection Bureau recently exercised its authority under RESPA and clarified the borrower's rights to have errors corrected. See 12 C.F.R. § 1024.35.

87. Under Section 2605(e) and the implementing regulations ("Reg. X"), including the recent amendments, servicers must take the following actions upon receipt of a QWR and/or NOE:

- Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;

- Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide the borrower with a written explanation of the corrections made, the effective date of the correction and contact information for further assistance;

- If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and

11

> If a servicer determines that it is not required to comply with these requirements, then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

88. Driggers' mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

89. Fay and Caliber are each a "servicer" concerning Driggers' loan as that term is defined in 12 U.S.C. § 2605(i)(2).

90. Plaintiff's letters to each Servicer Defendant constituted a "Qualified Written Request" and a "Notice of Servicing Error" within the meaning of 12 U.S.C. § 2605(e) and Regulation X.

91. The Servicer Defendants have violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWRs and NOEs as required under that section and Reg. X. Specifically, they failed to conduct any reasonable investigation of the errors described in Plaintiff's letters and failed to correct Plaintiff's account to reflect terms of Driggers' prior Agreements.

92. Fay and Caliber also violated 12 U.S.C. § 2605(k) in at least the following ways:

> Failing to take timely acknowledge and respond to Plaintiff's notices of servicing errors;

> Failing to comply with the requirements set out in Reg. X regarding responding to a QWR and an NOE; and

> Failing to correct Plaintiff's account.

93. Their failure to adequately respond was either negligent or intentional.

94. Fay and Caliber, exhibiting a pattern and practice, ignored Plaintiff's NOEs on several different occasions, as stated above.

95. The actions of Fay and Caliber have harmed Plaintiff in at least the following ways:

    (a) Plaintiff has suffered worry and mental anguish;

    (b) Plaintiff was caused to pay money that was not owing;

    (c) Plaintiff was caused to pay for postage each time he mailed an NOE;

    (d) Plaintiff has incurred other costs and damages not explicitly set out here.

96. Plaintiff has suffered these actual damages as a proximate result of Servicing Defendants' failures to comply with Section 2605(e), which were either negligent or willful.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against the Servicer Defendants for violation of the RESPA, awarding the following relief:

    a. Statutory and actual damages for each violation as provided in 12 U.S.C. § 2605(f);

    b. Reasonable attorney's fees and costs expended in this proceeding; and

    c. Such other and further relief as the Court may deem proper.

## COUNT II
### (FDCPA VIOLATIONS)

97. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

98. This is a claim against the Servicer Defendants for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Servicer Defendants have attempted to collect a debt that is owed to another, and they obtained the mortgage and servicing rights after they considered it to be in default.

99. Each Servicer Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

100. Within the last 12 months next preceding the filing of the original complaint, Servicer Defendants have attempted to collect amounts from Driggers that were not owing.

101. The debt which Servicer Defendants attempted to collect from Plaintiff is a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

102. Servicer Defendants have violated the FDCPA in connection with its collection attempts against Plaintiff. Servicer Defendants' violations include, but are not limited to, the following:

    a. Attempting to collect amounts that not are owing and not authorized by any contract or permitted by law in violation of 15 U.S.C. § 1692f(1);

    b. Attempting to collect a debt by use of false, deceptive, and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e.

103. Servicer Defendants took the actions in violation of the FDCPA within one year of the filing of this action.

104. Servicer Defendants' FRCPA violations were either negligent or intentional.

105. As a proximate result of Servicer Defendants' FDCPA violations, Plaintiff has suffered actual damages and loss of money.

106. As a result of its violations of the FDCPA, Defendants are liable to Plaintiff for compensatory damages, statutory damages, costs, and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants for the following:

    a. Actual damages;

    b. Statutory damages pursuant to 15 U.S.C. 1692k;

    c. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k;

    d.    Such other and further relief as this Court deems just and proper, the premises considered.

## COUNT III
### (BREACH OF CONTRACT)

107. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set out herein.

108. This Count asserts claims against both Servicer Defendants and Citibank.

109. Citibank discharges its duties and obligations under the subject mortgage and note through the actions of Fay, its mortgage servicing agent at all relevant times.

110. The mortgage agreement requires that every payment accepted by the Lender be applied first to interest, then to principal, and then to any amounts owed to escrow. Citibank, through the actions of its servicing agent Fay, has breached the mortgage agreement by failing to apply Plaintiff's payments correctly. Citibank has also, through the actions of Fay, charged late fees and other default-related charges in the absence of any delinquency and contrary to the provisions of the mortgage and note.

111. Plaintiff has suffered damage as a proximate result of the said breach.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Fay and Citibank for breach of the mortgage and award him compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
### NEGLIGENCE *PER SE*

112. The relevant allegations in the above paragraphs are hereby asserted and realleged by reference as if fully and completely set out herein.

113. At all relevant times, the Servicing Defendants were governed by Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA") and its regulations (Regulation X).

114. According to the Consumer Financial Protection Bureau, "[a]consumer protection purpose of RESPA is to help borrowers avoid unwarranted or unnecessary costs and fees[.]" 78 FR 10696-01.

115. The Servicicer Defendants violated RESPA and Regulation X by committing one or more servicing errors.

116. These servicing errors are the type of mistakes that RESPA and Regulation X were intended to prevent.

117. Driggers is a member of the class of persons that RESPA and the FDCPA were intended to protect.

118. Regulation X at Section 1024.35(b) sets a standard for loan servicing and defines a servicing "error" as any of the following:

> (1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.
> (2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.
> (3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).
> (4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).
> (5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.
> (6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).
> (7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

  (8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.
  (9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).
  (10) Moving for foreclosure judgment or order of sale or conducting a foreclosure sale in violation of § 1024.41(g) or (j).
  (11) Any other error relating to the servicing of a borrower's mortgage loan.

  119. Fay and Caliber violated RESPA and beached their standard of care under RESPA. They were grossly negligent in their servicing of the Plaintiff's mortgage and their failure to correctly investigate and correct the errors complained about by Driggers violate Regulation X. Their negligence also includes, but is not limited to, failing to review the Plaintiff's file as received from Beneficial and accurately account for the payments made by Plaintiff. These actions constitute negligence, and Plaintiff has suffered damage as a proximate result thereof.

  120. Also, at all relevant times the Servicing Defendants were governed by the Fair Debt Collection Practices Act 15 U.S.C. §§ 1692–1692p.

  121. Fay and Caliber were grossly negligent in their servicing of Plaintiff's mortgage and failed to comply with the FDCPA in at least the following ways:

- Collection of amounts that were not owing;
- Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property when there is no present right to possession of the property.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff requests that the Court enter judgment in his favor against Caliber and Fay awarding compensatory damages, including damages mental anguish and emotional distress, as well as punitive damages, attorney's fees, and costs.

## COUNT V
## WANTONNESS

122.    The allegations in the above paragraphs are now asserted and realleged by reference as if fully and completely set out herein.

123.    Caliber and Fay have been wanton while servicing Plaintiff's mortgage.  Their wantonness includes, but is not limited to; the failure to accurately account for the payments made by Plaintiff, improperly applying funds, and imposing charges which were known or should have been known were incorrect.  These actions constitute wantonness, and Plaintiff has suffered damage as a proximate result thereof.

WHEREFORE, THE PREMISES CONSIDERED, after due proceedings, Plaintiff requests that the Court enter judgment in his favor against Defendants for compensatory damages, including mental anguish and emotional distress, as well as, attorney's fees, punitive damages, and costs.

**Respectfully** submitted on this the 9th  day of December 2019.

/s/Earl P. Underwood, Jr.
EARL P. UNDERWOOD, JR.
Attorney for Plaintiff

**OF COUNSEL:**
**UNDERWOOD & RIEMER, P.C.**
**21 S Section Street**
**Fairhope, Alabama 36532**
**Phone:   251.990.5558**
**Email: epunderwood@alalaw.com**

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

/s/Earl P. Underwood, Jr
**Earl P. Underwood, Jr.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of December 2019 a copy of the foregoing pleading has been electronically served through the Court's CM/ECF filing system to all counsel of record.

/S/Earl P. Underwood, Jr.
EARL P. UNDERWOOD, JR. (UND008)