IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. DRIGGERS, | * |
| Plaintiff, | * |
| | * |
| vs. | * |
| | * |
| CALIBER HOME LOANS, INC., and | * Civil Action No.: 1:19-cv-00850-JB-B |
| FAY SERVICING, LLC., and | * |
| CITIBANK N.A. AS TRUSTEE FOR | * |
| CMLTI ASSET TRUST, | * |
| Defendants. | |

**PLAINTIFF'S SURREPLY IN FURTHER OPPOSITION TO PARTIAL MOTION TO DISMISS FILED BY DEFENDANT FAY SERVICING, LLC. AND (ALTERNATIVE) REQUEST TO CERTIFY QUESTION**

**COMES NOW** Plaintiff and, in further response in opposition to the Motion for Partial Dismissal (Doc. 31) filed by Fay Servicing, LLC ("Fay"), submits the following:

**INTRODUCTION AND SUMMARY**

Counts IV and V state *per se* tort claims premised on Fay's breach of statutory and regulatory obligations arising under RESPA and the FDCPA. Fay's Motion for Partial Dismissal (Doc. 31) relies solely on a line of cases proceeding from Blake v. Bank of Am., N.A., 845 F. Supp. 2d 1206 (M.D. Ala. 2012), holding that mortgage servicers are not subject to general tort liability. Fay did not address Driggers' *per se* tort claims until it's Reply (Doc. 38), wherein it argued that the Blake line of cases also requires dismissal of not only generic tort claims but also *per se* tort claims premised on a breach of statutory duties. Because this argument was made for the first time in a Reply, Plaintiff filed a Motion to Strike the Reply (Doc. 41).

A telephonic hearing was held on the Motion to Dismiss on March 24th during which the Court indicated that the Motion to Strike would be denied, but that Plaintiff would be allowed to file a SurReply within thirty (30) days.

Fay's argument boils down to a single issue: are tort claims premised on the breach of statutory and regulatory duties cognizable against a mortgage servicer when such *per se* tort liability extends to every other actor under Alabama law? Fay blithely suggests that the Blake line of cases addressing general tort liability extends to also stamp out any *per se* tort CLAIMS a duty arising from statute or regulation. But this requires a huge leap from the Blake cases - a leap in direct conflict with established Alabama and federal caselaw recognizing the bedrock principle that statutory and regulatory duties can form the basis of tort liability.

## ARGUMENT

**A.     Mortgage Servicers and The Blake General Tort Immunity Doctrine**

Mortgage servicers act on behalf of the holder of the mortgage loan (the "investor") (typically a securitized investment trust or quasi-governmental entity such as Fannie Mae) and perform all of the day-to-day management of the mortgage. Servicers manage about 70% of all mortgages and are in total control of all the dealings with the homeowner. This includes, *inter alia*, collecting and applying payments, managing escrow, paying insurance premiums and property taxes, deciding whether and when to foreclose, credit reporting, and distributing insurance proceeds from any homeowners' claim. In the borrower-investor-servicer relationship there are contractual obligations flowing between the borrower and investor (the note and mortgage) and between the investor and the servicer (the servicing agreement). However, there is no contractual privity between the servicer and the borrower. In fact, the borrower has no control in the selection, hiring or firing the servicer, no matter how dissatisfied the borrower is with servicer's management of his mortgage.

In arguing that the Court should abolish *per se* tort liability in servicer cases and ignore established federal and state law recognizing liability based on a breach of statutory and regulatory duties, Fay relies on a body of Alabama federal district court cases originating from the 2012 decision in Blake v. Bank of Am.,N.A., 845 F. Supp. 2d 1206 (M.D. Ala. 2012). In Blake, Judge Fuller held that mortgage servicers could not be liable to borrowers in tort because "Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract." This tort immunity rule was then cited in a number of district court decisions as justification for dismissing general tort claims against servicers – essentially immunizing mortgage servicers from the same general tort liability applicable to nearly every other actor in society. Yet, the bulk of those cases, including Blake itself, fail to provide an in depth explanation of any policy basis for exempting an entire segment of corporate actors from general tort liability applicable to every other actor in society, let alone the companies managing most residential mortgages. The majority of those decisions merely cite to Blake or its progeny, dismiss the tort claims and move on. A deeper dive into this line of cases reveals a direct conflict with core concepts in Alabama tort law and the absence of any sound basis extending the geenral tort immunity to extinguish *per se* tort liability.

**B.     Existence of Contractual Obligations Does Not Negate Tort Liability**

The basis cited, when there is one, in most of the Blake cases (and Blake itself) is the existence of contractual obligations. This incorrectly assumes some mutual exclusivity between tort liability and the existence of a contract. Alabama law has long recognized that a general duty of care can exist where there is also a contractual duty owed. In Morgan v. South Central Bell, Morgan v. S. Cent. Bell Tel. Co., 466 So. 2d 107, 114 (Ala. 1985), the Alabama Supreme Court unambiguously recognized that tort liability can indeed rest on duties arising from contract when there is misfeasance in performance of a contractual obligation. S*ee also* Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 679 (Ala. 2001)("At common law, a duty of due care ***can***

3

*accompany a contractual obligation*." (emphasis added)).   Even Judge Fuller recognized that the existence of contractual obligation does not exclude tort liability: "Under Alabama law… misfeasance or negligence affirmative conduct in the performance of a promise can subject an actor to both tort and contract liability." Glenn Const. Co., LLC v. Bell Aerospace Servs., Inc., 785 F. Supp. 2d 1258, 1293–94 (M.D. Ala. 2011)(J. Fuller).

It's also worth noting that there is no direct contractual privity between a servicer and the borrower.  *See, e.g.*, Williams v. Wells Fargo Bank N.A., 2011 WL 4901346, at *13 (S.D. Fla. Oct. 14, 2011).  Therefore, the borrower does not possess the option of suing the servicer in contract.  The investor selects and hires the servicer who contracts with the investor to service the loan in accordance with the mortgage and note; but there is no contract between the servicer and the borrower.  The borrower is powerless to fire or otherwise effect the servicer's behavior.  Not only does this eliminatate contract liability to the borrower, it also removes any market-based incentives to provide satisfactory service to the borrower.[1]

**C.**     **There is Tort Liability to Third Parties When Performing Contractual Obligations**

Another problem with Blake tort immunity is its clash with well-established Alabama law regarding harm to third parties stemming from a breach of contractual duties. Alabama has long recognized tort liability to third parties when performing contractual obligations owed to another. "[T]his Court held that 'where one party to a contract assumes a duty to another party to that contract, and it is foreseeable that injury to a third party—not a party to the contract—may occur upon a breach of that duty, the promissor owes that duty to all those within the foreseeable area of risk.'" QORE, Inc., 25 So. 3d 116, 1124 (Ala. 2009), *quoting* Harris v. Board of Water & Sewer Commissioners of Mobile, 294 Ala. 606, 613, 320 So.2d 624, 630 (1975). "[A] person to whom a

---

[1] Levitin and Twomey, *Mortgage Servicing*, 28 Yale Journal on Regulation 1 (2011), available at https://www.law.berkeley.edu/files/bclbe/Levitin_Servicers.pdf

party owes a duty—i.e., a "foreseeable plaintiff"—includes a third party who could foreseeably be injured if a party to a contract fails to properly carry out its duties under that contract. Glasgow v. Jackson Land Surveying, LLC, 236 So. 3d 111, 115 (Ala. Civ. App. 2017); *see also* Federal Mogul Corp. v. Universal Constr. Co., 376 So.2d 716, 724 (Ala. Civ. App. 1979) ("[A] plaintiff may nevertheless recover in negligence for [a] defendant's breach of duty where [the] defendant negligently performs his contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable."). As pointed out in QORE, Inc., an important aspect of the application of tort liability in this situation is the third party's reliance upon and expectation of the tort-feasor's proper performance of its contractual obligations. "Even when a third party is not in privity with the parties to a contract and is not a third-party beneficiary to the contract, the third party may recover in negligence for breach of a duty imposed by that contract if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable." QORE, Inc. v. Bradford Bldg. Co., 25 So. 3d 1116, 1124–25 (Ala. 2009).

This is certainly true in the servicer-investor-borrower context. The servicing arrangement places the borrower completely at the mercy of the servicer's ability or willingness to correctly perform its duties - his very home depends on it. The servicer alone who decides how to apply payments, whether there is a default and when to foreclose. When a borrower submits a payment, he rightly expects that the servicer will, in performing the contractual duties are owed to the investor, correctly apply the payment and not wrongfully hold him in default. While the servicer's contractual duties are to the investor, the borrower suffers directly from any failure to properly perform those duties. By the same token, the foreseeability of the harm to the borrower from a servicer's error is self-evident. None of the Blake decisions explain, other than to cite the existence

of a contract, why borrowers should be carved out of this well-established protection from foreseeable harm caused when a defendant fails to properly perform contractual duties it owes to another.

**D.   The Blake Doctrine and Negligence vs. Wantonness**

Even among some cases following Blake, there is a distinction between negligence and wantonness claims; and a recognition that wantonness claims are permissible.  After dismissing plaintiff's negligent servicing claim, Judge Dubose observed "[w]antonness, however, is a separate issue. The Alabama Court of Civil Appeals recently held that while proof of physical injury or being placed in immediate risk of physical injury is required to recover mental anguish damages on a claim for negligence, such proof is not required for mental anguish damages on a wantonness claim."  Givens v. Saxon Mortg. Servs., Inc., 2014 WL 2452891, at *15 (S.D. Ala. June 2, 2014)(Wantonness claim against servicer, unlike negligence, cognizable where there is a claim for emotional damage damage); *See also* Shedd v. Wells Fargo Home Mortg., Inc., 2015 WL 6479537, at *6 (S.D. Ala. Oct. 26, 2015)(denying motion to dismiss wantonness claim against servicer where there is a claim of non-economic damages – emotional distress damages).  As in those cases, Driggers' seeks damages for emotional distress.  Thus, even if the Court were to agree with Fay that Blake required dismissal of the negligence *per se* claim, Driggers' wantonness claim should stand.

**E.   Alabama's *Per Se* Tort Doctrine**

Fay's request to apply the Blake cases to extinguish any possibility of *per se* tort liability conflicts with the well-established principle in Alabama that a legal duty of care can arise from statutory obligations.  It is a generalized, not industry-specific, principle: where there are statutory or regulatory duties aimed at protecting a class of which plaintiff is a member, then breach of those duties may provide a separate basis of tort liability.  Parker Bldg. Servs. Co. v. Lightsey ex rel.

6

Lightsey, 925 So. 2d 927, 931 (Ala. 2005).[2] "A legal duty to exercise care, therefore, arises where the parties are bound by contract, . . . *or where the obligations are 'expressly or impliedly imposed by statute, municipal ordinance, or by administrative rules or regulations*, or by judicial decisions.' King v. Nat'l Spa & Pool Inst., Inc., 570 So. 2d 612, 614 (Ala. 1990)(emphasis provided), *quoting* 57 Am.Jur.2d, *Negligence* § 36 at 382 (1988); see also Thompson v. Mindis Metals, Inc., 692 So. 2d 805, 807 (Ala. 1997)("A legal duty arises *either* from the common law or from a statute") (emphasis provided); Carter v. Chrysler Corp., 743 So. 2d 456, 463 (Ala. Civ. App. 1998)("Certainly, a duty of care can arise from a statute").

As stated in the Response, the Eleventh Circuit and other federal courts have regular applied these *per se* tort rules to violations of consumer statutes, including violations by mortgage servicers. (Doc. 37, pp. 6-7).[3] This includes Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156, 1166 (M.D. Ala. 1999), wherein Judge De Ment held that a tort claim under Alabama law was properly premised on RESPA violations.

> It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." Thompson v. Mindis Metals, Inc., 692 So.2d 805, 807 (Ala.1997) (citations omitted). "A legal duty arises *either* from the common law *or* from a statute." *Id.* The court finds that Defendant had a legal duty arising from a statute because § 2605 of RESPA imposes duties on mortgage loan servicers. Specifically, under § 2605, mortgage loan servicers must: (1) provide a notice of receipt of a qualified written request within 20 days of receipt of said request, *see* 12 U.S.C. § 2605(e)(1); and (2) take certain action with respect to the qualified written request within 60 days of receipt of said request, see id. § 2605(e)(2).

---

[2] The basic elements of torts liability based on a breach of statutory duties is are set out in Parker Bldg. Servs. Co. and are discussed in Plaintiff's response brief (Doc. 7).

[3] One of the cases cited therein was Ranger v. Wells Fargo Bank N.A., 757 F. App'x 896, 904 (11th Cir. 2018), which applied Florida law. Ranger applies here because Florida, like Alabama, recognizes *per se* tort liability premised on the violation of statutory duties. *See, e.g.*, Resnick v. AvMed, Inc., 693 F.3d 1317, 1325 (11th Cir. 2012).

Id. at 1167 (emphasis added).

While it's true that some of the Blake cases address *per se* claims, they are distinguishable because, unlike here, the plaintiffs failed to properly plead claim. James v. Nationstar Mortg., LLC, 92 F. Supp. 3d 1190, n. 9 (S.D. Ala. 2015)(citing the failure to plead as the primary reason for dismissing the *per se* tort claims); Costine v. BAC Home Loans, 946 F. Supp. 2d 1224, 1233 (N.D. Ala. 2013)("Plaintiffs have failed to identify, either in their Complaint or their brief, any applicable statute or regulation that has been violated") Prickett v. BAC Home Loans, 946 F. Supp. 2d 1236, 1247 (N.D. Ala. 2013)(same).  On the other hand, Driggers clearly pleads the breach of statutory duties arising under RESPA and the FDCPA as a basis of his tort claims. (Doc. 20, pp. 15-18).

Among the Blake cases, the only substantive discussion of a servicer's *per se tort* liability appears of in the later part of Note 9 of the James opinion.  After concluding that plaintiff did not adequately identify a statutory violation, Judge Steele observed as follows:

> Second, federal courts in Alabama have given short shrift to similar efforts invoking the doctrine of negligence *per se* to outflank the phalanx of case authorities holding that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing. *See Costine,* 946 F.Supp.2d at 1233–34; *Prickett,* 946 F.Supp.2d at 1247. Third, the singular case that plaintiffs cite in support their position, *Rawlings v. Dovenmuehle Mortg., Inc.,* 64 F.Supp.2d 1156, 1167 (M.D.Ala.1999), was decided more than a dozen years before the sprawling body of case law expressly concluding that Alabama law does not allow plaintiffs to sue for negligent or wanton mortgage servicing. Not surprisingly, *Rawlings* in no way considers (much less rebuts) the reasoning underlying such authorities, so it cannot support the proposition that these numerous recent federal cases have all interpreted and applied Alabama law incorrectly. Fourth, the Jameses' appeal to negligence *per se* cannot help them because the legal duties underlying their claims against FNMA and Nationstar arise in contract. The statutes in play in this case regulate the contractual relationship between the Jameses and FNMA / Nationstar, but do not eliminate or supplant that contractual relationship; therefore, the reasoning of the line of authorities beginning with *Blake* (*i.e.,* that the obligations in question are rooted in contract rather than tort) remains fully intact, even in the face of a negligence *per se* claim (had plaintiffs properly presented one in their pleading, which they did not).

James, 92 F. Supp. 3d 1190, n. 9.

But this provides no compelling justification for the wholesale exemption of servicer's from *per se* tort liability. First, Costine and Prickett have no applicability here because, as stated, those *per se* claims were dismissed because of the failure to properly plead. Second, dismissing Rawlings due to its age would only make sense if there was an intervening change in Alabama's *per se* tort doctrine. There has been none and the *per se* tort doctrine remains as viable in Alabama now as ever. As recently as 2017 the Alabama Supreme Court restated the rule that tort liability may be based on duties "'expressly or impliedly imposed by statute, municipal ordinance, or by administrative rules or regulations, or by judicial decisions.'" Bain v. Colbert Cty. Nw. Alabama Health Care Auth., 233 So. 3d 945, 963 (Ala. 2017)(emphasis in original), *quoting* King v. National Spa & Pool Inst., Inc., 570 So.2d 612, 614 (Ala. 1990). The only intervening event since Rawlings has been the emergence of the Blake cases which, as stated above, provide no valid basis for supplanting well-established Alabama law allowing for tort claims arising from a breach of statutory duties.

Blake only addressed tort claims premised on the general duty of care. The language in the James footnote extending that finding to *per se* liability claims assumes that tort liability springing from a statutory breach is derivative of or a subset of the common law general duty of care. Only with that assumption would it follow that because (under Blake) there is no general duty of care, there necessarily is also no *per se* tort liability. But it's clear that in Alabama statutory duties form an independent basis for tort liability, *separate and apart* from the common law general duty of care. "A legal duty arises *either* from the common law or from a statute." Thompson v. Mindis Metals, Inc., 692 So. 2d 805, 807 (Ala. 1997)(emphasis added); *see also* Graveman v. Wind Drift Owners' Ass'n, Inc., 607 So. 2d 199, 203 (Ala. 1992)("There must be

9

*either* an underlying common law duty *or* a statutory duty of care with respect to the allegedly tortious conduct.")(emphasis added). Thus, even if Blake eliminates the application of the general duty of care to servicers, it does not follow that can be no tort liability stemming from a breach of statutory duties – a recognized separate and alternative basis for tort liability.

In sum, neither Blake nor any other authority in Alabama law, provides a basis for the wholesale exemption of the servicing industry from the well-established principle that tort claims may be premised on violations of statutory duties. Tort liability on this basis has been applied generally and broadly to any actor subject to statutory obligations, regardless of industry; and (as far as the undersigned can tell) Alabama law has granted no exemption from this principle to any class or group of private actors. *See* Michael Roberts & Gregory Cusimano, *Alabama Tort Law* § 1.1.3. (3rd ed. 2000). Nothing in the Blake line of cases justifies the radical conclusion that the entire servicing industry is immunized from this well-established and broadly applied tort principle.

### F. Alternative Request to Certify the Question to the Alabama Supreme Court

As an alternative to denying the Partial Motion To Dismiss, the Court could certify the question to the Alabama Supreme Court. That question would be as follows: Given the rule, articulated principally in Alabama Federal district courts, that Alabama law does not recognize the tort of negligent mortgage servicing, are mortgage servicers exempt from the recognized rule that tort liability may be premised on the violation of a statute or regulation?[4]

---

[4] The Alabama Supreme Court recognized the Blake doctrine in U.S. Bank Nat. Ass'n v. Shepherd, 202 So. 3d 302, 314 (Ala. 2015), but only in the context of torts premised on the common law general duty of care. That case addressed a wantonness claim based on actions taken by the servicing agent in allegedly foreclosing on the wrong parcel. The case involved no claim of statutory violation or tort liability premised on any statutory violation.

10

The certification of questions to the Alabama Supreme is governed by Alabama Appellate Rule 18 which states as follows:

> When it shall appear to a court of the United States that there are involved in any proceeding before it questions or propositions of law of this State which are determinative of said cause and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court may certify such questions or propositions of law of this State to the Supreme Court of Alabama for instructions concerning such questions or propositions of state law, which certified question the Supreme Court of this State, by written opinion, may answer.

Ala. R. App. P. 18.  Judge Steele recapped the considerations for certification as follows:

> The decision whether to certify a question of state law to a state supreme court is committed to this court's discretion ...." *Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924 (11th Cir. 1986). "In determining whether to exercise our discretion in favor of certification, we consider many factors." *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274 (5th Cir. 1976). "The most important are the closeness of the question and the existence of sufficient sources of state law—statutes, judicial decisions, attorney general's opinions – to allow a principled rather than conjectural conclusion." *Id*. at 275. "But also to be considered is the degree to which considerations of comity are relevant in light of the particular issue and case to be decided," which includes "the likelihood of the recurrence of the particular legal issue." *Id.* & n.29. "And we must also take into account practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court." *Id*. at 275.[1]

Williams v. Wells Fargo Home Mortg., Inc., No. 15-0164-WS-N, 2015 WL 5884870, at *2 (S.D. Ala. Oct. 7, 2015).

Plaintiff suggests that all of the considerations favoring certification are present here.  Although, as explained, there is no valid justification for eliminating *per se* tort liability for servicers, the language in James at least renders this as a viable argument.  Considering the strong Alabama law recognizing across-the-board *per se* tort liability and its direct conflict with the treatment of the issue in James, the question could be regarded as "close."  And there certainly exist ample sufficient sources of state law "to allow a principled rather than conjectural conclusion."  Moreover, the likelihood of the recurrence of this issue in federal and state court is substantial.  After all, the servicers managing a large majority of Alabama home mortgages are

11

subject to a robust federal regulatory regime and commonly commit serious errors. It is expected that borrowers will continue to bring claims, including tort claims, premised on those errors and alleged violations of federal law. The practical impacts on the prosecution of this case are minimized by the fact that this issue affects only a part of Plaintiff's claims. Therefore, this case can proceed while the question is determined by either this Court or by certification to the Alabama Supreme Court.

## **CONCULSION**

For the reasons stated herein, the Motion for Partial Dismissal is due to be denied. As an alternative, Plaintiff requests that the controlling question regarding *per se* tort liability be certified to the Alabama Supreme Court.

Respectfully submitted this the 27th day of April, 2020.

*/s/ Kenneth J. Riemer*
KENNETH J. RIEMER (RIEMK8712)
Underwood & Riemer, P.C.
2153 Airport Boulevard
Mobile, AL 36606
Telephone:   (251) 432-9212
Email: kriemer@alalaw.com

Earl P. Underwood, Jr., Esq.
Underwood & Riemer, P.C.
21 South Section Street
Fairhope, Alabama 36532
Telephone:   (251) 990-5558
Facsimile:   (251) 990-0626
Email: epunderwood@alalaw.com
***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 27th day of April 2020, electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                              */s/ Kenneth J. Riemer*
                                              KENNETH J. RIEMER (RIEMK8712)