# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISON

| | |
|---|---|
| JAMES R. DRIGGERS,<br><br>    Plaintiff,<br><br>vs.<br><br>CALIBER HOME LOANS, INC.,<br>FAY SERVICING, LLC, and<br>CITIBANK N.A. AS TRUSTEE FOR<br>CMLTI ASSET TRUST,<br><br>    Defendants. | Case No. 1:19-cv-00850-JB-B |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Defendants, Fay Servicing, LLC and Citibank N.A. as trustee for CMLTI Asset Trust, and together move the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for the entry of summary judgment on all claims against them made by the Plaintiff, James R. Driggers. As further discussed herein below, the undisputed evidence confirms that the Defendants discharged all RESPA obligations, and the Plaintiff possesses no evidence to support the alternative contention that his mortgage account has been improperly charged in violation of the FDCPA or the terms of his loan documents. Plaintiff's other claims, for negligence per se and wantonness, are not legally recognized in Alabama in the context of a mortgage servicing dispute. Due to the lack of essential evidence and

1

the legal bar to his negligence and wantonness claims, there exists no genuine issues of fact material to any of Plaintiff's claims and the Defendants are entitled to a judgment in their favor as a matter of law. In further support of this motion, the Defendants state as follows:

### Narrative Summary of Undisputed Material Facts

1. The Plaintiff, James Driggers ("Driggers") and his now ex-wife, Karen Driggers, purchased the improved real property located at 12240 Sandy Creek Drive in Foley, Alabama (the "Property") on or about May 5, 1995. Subsequent to their divorce, in June 1997, Karen Driggers deeded her interest in the Property to Driggers. Exhibit 1 – Driggers's Deeds.

2. On or about April 13, 2007, Driggers signed a Loan Agreement borrowing $125,996.80 from Beneficial Alabama Inc. (the "Note"). Exhibit 2 – Driggers's Note. Driggers secured the loan debt to the Property with that certain mortgage recorded as instrument number 1044057 in the office of the Probate Judge of Baldwin County, Alabama (the "Mortgage"). Exhibit 3 – Driggers's Mortgage.

3. In 2010, Driggers defaulted on his loan by failing to make the monthly payments and his lender at the time, Beneficial Alabama Inc., foreclosed on the Property and sued Driggers for ejectment. Am. Compl. Doc. 20, ¶¶17-18. Driggers filed for bankruptcy protection (S.D. Ala. Bk. 10-03859), and after several years of

litigation ultimately avoided the foreclosure and ejectment by reaffirming the amount and terms of his debt with Beneficial. Exhibit 4 – 2012 Reaffirmation Agreement

4. A few years later, on or about May 1, 2015, Driggers's Note and Mortgage were sold to LSF9 Master Participation Trust, where they were serviced by the former Defendant, Caliber Home Loans, Inc. ("Caliber") Am. Compl. doc. 20, ¶34; Exhibit 5 – LSF9 Assignment.

5. By March 19, 2018, a dispute had arisen between Driggers and his lender at the time, LSF9 Master Participation Trust, regarding an alleged failure of payment. Am. Compl. Doc. 20, ¶¶36-37. Caliber considered the loan to be in default, but Driggers maintains that all sums then due had been paid in full. Id.; Exhibit 6 – Driggers Depo. pg. 28:6 – 30:4. Driggers and Caliber resolved this dispute by agreeing to a modification of the terms of Driggers's loan to "defer" past due sum of $30,488.36 to the end of the loan. Exhibit 7 – 2018 Modification.

6. On or about October 31, 2018, Driggers's Note and Mortgage were sold to the Defendant, Citibank N.A. as trustee for CMLTI Asset Trust ("Citibank"), where it was serviced by the Defendant, Fay Servicing, LLC ("Fay"). Am. Compl. doc. 20, ¶¶ 55-56.

7. At the time the Note and Mortgage were transferred to Citibank, Driggers was not in default. Exhibit 6 – Driggers Depo. pg. 42 4:14. Fay's account

records also show that at the time of transfer Driggers' loan was not in default. Exhibit 8 – Fay Account Summary.

8. As part of this case, Driggers entered into a pro tanto settlement agreement with Caliber, wherein he expressly released any and all claims he had or may have had against Caliber or its successors in interest, including specifically Fay, relating to his loan and accruing on or prior to November 1, 2018. Exhibit 9 – Pro Tanto Settlement Agreement, pgs. 2-3, ¶5.

9. In November 2018 and again in January 2020, Driggers claims that he sent Fay a Notice of Error ("NOE") raising several concerns relative to his account. Exhibit 10 – First NOE; Exhibit 11 – Second NOE.

10. There is no proof either of these first two NOEs was actually delivered, as Driggers has the certified mail "green card" for only the third NOE. Exhibit 6 – Driggers Depo. pg. 62 4:23. Fay denies receipt of either of these NOEs. Exhibit 12 – Fay Affidavit ¶¶ 8-9; Exhibit 13 – Fay 30(b)(6) depo. pg. 16 2:12, pg. 29 1:15. Fay did not respond directly to either of these first two NOEs.

11. As early as November 16, 2018, Driggers was informed by Fay of a default. His homeowner's insurance had been cancelled. Exhibit 14 – Fay NOE Response. On January 8 2019, Driggers had a telephone call with Fay where he was informed of escrow shortage on his account, caused by the lack of insurance, that was going to cause his monthly payment to increase from $604.08 to $810.43.

Exhibit 15 – Fay Servicing Notes, pg. 10; Exhibit 8 – Fay Account Summary. This escrow shortage and payment change are shown in Fay's account analysis. Exhibit 8 – Fay Account Analysis. Driggers informed Fay he could not afford the change. Exhibit 15 – Fay Servicing Notes, pg. 10.

12. On February 18, 2019, Driggers sent Fay a Notice of Error relative to his account. Exhibit 16 – Third NOE. The Notice of Error was delivered on February 25, 2019. Exhibit 14 – Proof of delivery. Fay acknowledged service of the Notice of Error on February 27, 2019. Am. Compl. doc. 20 ¶71. Fay completed its investigation and provided a separate, written response for each of the issues identified in Driggers's Notice of Error on March 11, 2019. Am. Compl. doc. 20 ¶73; Exhibit 14 – Fay NOE Response.

13. In February, March, April, May and June, 2019, Driggers continued making monthly payments in the old amount ($604.08), not the new amount ($810.43), causing him to incur late fees and other costs each successive month. Exhibit 8 – Fay Account Summary.

14. Driggers has identified the late fees and escrow charges as the amounts at issue in this case. Exhibit 17 – Driggers Interrogatory Responses

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant meets this burden by showing an absence of evidence necessary to support the nonmoving party's claims, on which the nonmoving party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the absence of necessary evidence is shown, the burden shifts to the nonmoving party to go beyond the pleadings, and to "come forward with specific facts," not allegations, not denials, but actual evidence sufficient to show that there is a genuine issue upon which a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

## Argument

**I.    The only available evidence confirms that Fay has satisfied its RESPA obligations in relation to the only Notice of Error it received.**

Count I of Driggers's Amended Complaint attempts a claim under the Real Estate Settlement Procedures Act (RESPA) against the "Servicer Defendants," defined as Fay and Caliber. Am. Compl. doc. 20 ¶¶5-6, 91. All claims against Caliber having been settled. Exhibit 9 – Pro Tanto Agreement.  This claim lies only potentially against Fay.

RESPA is a consumer protection statute that in pertinent part imposes a duty on mortgage loan servicers to acknowledge and respond "if any servicer of a federally related mortgage loan receives a qualified written request received from the borrower." 12 U.S.C. §2605(e)(1)(A). Only when qualifying written request is actually received is the servicer is required to timely investigate the issues raised and (i) make appropriate corrections or (ii) provide an explanation as to why the account was already correct. 12 U.S.C. §2605(e)(1)(A), (e)(1)(B), and (e)(2).  The borrower has the burden of proof to show that the loan servicer received the qualified written request, particularly where the lender has a designated address for such correspondence. *See Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1233 (N.D. Ala. 2013)(Facts showing "how [the qualified written request] was delivered are necessary to a RESPA claim); *see also Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 919 (11th Cir. 2017)(Holding borrower's failure to send the request to the designated address "does not trigger any duty to respond under RESPA."). RESPA does not require that the servicer give the desired response or make changes to the account that benefit or please the borrower, so long as it provides a statement of its reasons. *see Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1133 (11th Cir.2014)(Finding that servicer's response was sufficient where it provided reasons supporting its belief that the account was correct, regardless of whether borrower

"was confused and/or unsatisfied with this answer"); *Chipka v. Bank of Am.*, 355 Fed. Appx 380, (11th Cir. 2009)(No RESPA violation occurred where servicer provided explanation of why borrower was incorrect about the account's history).

Here the allegation is that Fay failed to respond at all to the first two of three alleged "Notices of Error" (NOE) and failed to respond adequately to the third NOE. Specifically, in relation to the third NOE, Driggers claims that Fay failed "to conduct any reasonable investigation," and failed further "to correct Plaintiff's account." These allegations lack essential, supporting evidence.

The first alleged NOE, dated November 13, 2018, was prepared by Driggers's attorney. Exhibit 10 – first NOE; Exhibit 6, pg. 50:10 – 52:22.  Fay has no record of this NOE and testified herein that it was never received. Exhibit 12 – Fay Affidavit ¶8. Exhibit 10 is the only copy of this NOE produced in discovery appears to be a draft, as it is not signed or accompanied by any evidence that it was ever delivered. Note also that this first NOE is incorrectly addressed to P.O. Box 809411 in Chicago, Illinois. Id. Fay maintains a dedicated address for qualified written RESPA requests, which is 901 S. 2nd Street, Suite 201, Springfield, Illinois. Exhibit 13 - Fay 30(b)(6) depo. pg. 16 2:6, pg. 29 1:12. Driggers was aware of this address and found it on Fay's website. Am. Compl. Doc. 20, ¶¶67-68. This incorrect address, coupled with the lack of evidence confirming delivery, fails a matter of law to trigger any RESPA response requirement for Fay.

The second alleged NOE is dated January 16, 2019. <u>Exhibit 11</u> – second NOE. Again, Fay has no record of this NOE existence and testified herein that it was never received. <u>Exhibit 12</u> – Fay Affidavit ¶9. The only copy of this second NOE produced in discovery appears to be a draft, as it is not signed or accompanied by any evidence that it was ever delivered to Fay. This second alleged NOE admittedly reflects the correct, Springfield, Illinois address, but Driggers has not even alleged that it was delivered and coupled again with the absence of evidence of delivery, this second NOE is still insufficient to trigger response duty under RESPA.

Only the third alleged NOE, dated February 18, 2019, checks all the necessary boxes. <u>Exhibit 16</u> – third NOE. This third NOE is properly addressed, it is signed by Driggers, and it is accompanied certified mail tracking information that proves its delivery. <u>Id.</u> This tracking information allows the parties to confirm that the third NOE was received on February 25, 2019. <u>Exhibit 17</u> – Proof of Delivery. It is undisputed that Fay acknowledged receipt withing five days, on February 27, 2019. Thereafter, Fay investigated Driggers's inquiries and responded with a full report of its findings as to each issue presented on March 11, 2019 – well within the thirty-day deadline. <u>Exhibit 14</u> – Fay NOE Response.

Driggers is obviously not satisfied with Fay's response, which found no error in the accounting and explained away the other concerns he raised. However, submission of a report pleasing to Driggers or crediting his account to suit his

9

averments is not the RESPA standard. Section §2605(e)(2)(B) provides that "after conducting an investigation," the servicer can discharge its duty by "provid[ing] the borrower with a written explanation or clarification that includes-- (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." Fay's response follows this direction, tracking each issue raised by Driggers, supplying an explanation why the accounting is correct as is, supplying supporting documentation, and giving the name and telephone number of an employee for further assistance. Exhibit 14 – Fay NOE Response. Therefore, Fay has satisfied all the RESPA requirements, and Driggers RESPA claim fails as a matter of law.

## II. Driggers has no proof that Fay is a "debt collector" or that it has violated of the FDCPA.

In Count II of Driggers's Amended Complaint he attempts a claim under the Fair Debt Collection Practice Act (FDCPA) against the "Servicer Defendants," defined as Fay and Caliber. Am. Compl. doc. 20 ¶¶5-6, 98. All claims against Caliber having been settled. Exhibit 9 – Pro Tanto Agreement. This claim lies only potentially against Fay.

The FDCPA applies only to "debt collectors" as that term is strictly defined therein. Janke v. Wells Fargo & Co., 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011); 15 U.S.C. 1692a(6). The FDCPA expressly states that the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … *concerns a debt which was not in default at the time it was obtained by such person"* 15 U.S.C. 1692a(6)(f). This exception applies to Fay because Driggers admitted during his deposition that he was not in default at the time his loan was obtained by Citibank and Fay. Exhibit 6 - Driggers depo. pg. 42 4:14. Fay agrees, so it does not meet the statutory definition of a "debt collector," and cannot be liable under the FDCPA.

Consider too that a claim under the FDCPA requires at least that the plaintiff prove that the debt collector "has engaged in an act or omission prohibited by the FDCPA." *Janke v. Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011)(citations omitted). Here the contention is that Fay has violated FDCPA by collecting late fees and escrow funds that are not authorized under the Note and Mortgage, or by employing false and deceptive tactics. Clearly, Driggers's Note and Mortgage authorizes the collection of late fees and escrow funds, so Driggers's claim can only be that they should not have collected the late fees and escrow funds in question. Exhibit 2 – Driggers Note, pgs. 2-5; Exhibit 3 – Mortgage, pg. 2 ¶1. Driggers is simply wrong.

In discovery Driggers identified roughly $800 in property tax escrows and late charges that he claims constitute the FDCPA violation. Exhibit 18 – Driggers Interrogatory Responses, pg. 5 ¶14. However, Driggers has no evidence of his own to confirm that any of these alleged amounts have been charged and must rely on Fay's account analysis. Exhibit 8 – Fay Account Summary. Suffice it to say that Fays' account analysis favor's Fay's position in the case and supports the propriety of the charges at issue. Driggers has no other evidence, and nothing specifically showing that any of the charges in question are inappropriate in type or amount. In fact, at his deposition, during a review of his account servicing history, Driggers admitted having a call with Fay in January 2019 where he was informed of escrow shortage on his account that was going to increase his monthly payment from $604.08 to $810.43. Exhibit 6 – Driggers depo., pg. 94 1:20, pgs. 109:17-112:20; Exhibit 8 – Fay Account Summary, pg. 2; Exhibit 15 – Fay Servicing Notes, pg. 10. This escrow shortage and payment change are supported as proper in type and sum by Fay's account analysis. Driggers's only response was to tell Fay that he could not afford the change and would have his attorney send them a "package." That package was the third NOE, wherein an increase in payment is one of the questions raised. Fay's account analysis shows that Driggers continued making monthly payments in the old amount ($604.08) not the new amount ($810.43) in February, March, April, May and June, 2019, incurring a late fee each time due to an incomplete payment.

12

<u>Exhibit 8</u> – Fay Account Summary. This is the only evidence on the subject of Driggers's payments and it also shows that Driggers has not since rectified these partial payments, causing each successive month's payment to be short, and incurring repeated late fees. Thus, it is definitively proven that the fees and charges Driggers is complaining of are not only proper but caused by Driggers's failure of payment after notice.

It is unclear if Driggers' understands how a mortgage works, or what the issues are with his account. Maybe he is simply following what has been a disturbingly successful pattern of suing his lender and servicer every time there is a question. Either way, Driggers claims fail here because cannot prove that any of the escrow charges or late fees charged to his account are incorrect.

## **III.   Driggers has no contract with Fay and no evidence of breach by Citibank.**

In Count III Driggers attempts a claim for breach of contract against both Citibank and Fay. Am. Compl. doc. 20 ¶108. The necessary elements of breach of contract are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala.2002)). A contractual relationship, in the form of the Note and Mortgage, clearly exists between Driggers and Citibank; however, no such relationship exists between Driggers and Fay. Fay

is merely the servicer of Driggers's loan hired by Citibank. Because Driggers does not have a contract with Fay, he has no claim against Fay for breach of contract. See *Blake v. Bank of America, N.A.*, 845 F. Supp 2d 1206, 1211-1213 (M.D. Ala. 2012)(holding that a mortgagor has no standing to sue its mortgagee's servicing company for breach of contract.) and *Webb v. Ocwen Loan Servicing, LLC*, 2012 WL 5906729, at *8 (S.D. Ala. Nov. 26, 2012)(finding that the lack of a binding contract between the borrower and his mortgage company's servicer prohibited a claim for breach of contract against the servicer).

As to Citibank, Driggers's breach claim offers no new wrinkle not otherwise treated in reference to his FDCPA claim. Driggers's fundamental allegation is that his account has been improperly charged in a manner inconsistent with the Note and Mortgage. Again, the Note and Mortgage expressly authorize the sorts of charges disputed, and Driggers possess no evidence to support the contention that the charges at issue are incorrect as to type or sum. Like his FDCPA, this breach claim is nothing more than an unsupported gripe about late fees and other charges based upon Driggers inability or refusal to understand his mortgage account. Driggers has again no evidence of his own to contest Fay's account or support the conclusion that any of the charges are inconsistent with the terms of his Note or Mortgage.

## **IV.     Claims for negligence, or negligence per se, and wantonness do not exist in Alabama in relation to mortgages or mortgage servicing.**

Driggers attempted claim of negligence – which he has now amended to negligence per se (doc. 20, ¶¶112) – and wantonness do not exist in Alabama. See *James v. Nationstar Mortg.*, LLC, 92 F. Supp. 3d 1190, 1198–99 (S.D. Ala. 2015)(Finding "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law."). This bright line legal bar, established by this court, has already been briefed in the Defendants' Partial Motion to Dismiss [doc. 44], which is incorporated herein by reference, remains pending, and is due to be granted.

Respectfully submitted on October 13, 2020.

  _s/ Timothy P. Pittman_____
Timothy P. Pittman (ASB-0075-I51P)
Amanda Becket
**RUBIN LUBLIN, LLC**
200 Clinton Avenue West, Suite 406
Huntsville, AL 35801
(678) 281-2972 (Telephone)
(404) 601-5095 (Facsimile)
tpittman@rubinlublin.com
abeckett@rubinlublin.com

*Attorneys for Citibank and Fay*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2020, a true and correct copy of the foregoing was served upon all parties as follows:

| | |
|---|---|
| Earl P. Underwood, Jr.<br>Kenneth J. Riemer<br>Underwood & Riemer, P.C.<br>21 S Section Street<br>Fairhope, Alabama 36532<br>epu@urlaw.onmicrosoft.com<br>kriemer01@gmail.com<br>*Attorney for Plaintiff* | via CM/ECF email |

      *s/ Timothy P. Pittman*_____
Timothy P. Pittman (ASB-0075-I51P)