IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES R. DRIGGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:19-00850-JB-B |
| | ) | |
| CALIBER HOME LOANS, INC., et al | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on Defendant Fay Servicing, LLC's ("Fay" or "Defendant")

Motion to Partially Dismiss Plaintiff's Amended Complaint (Doc. 31).[1] The Motion has been fully

briefed and is ripe for review.

**I.    BACKGROUND**

This dispute arises from Fay's and others' servicing efforts on Plaintiff's mortgage.

Plaintiff lives in Baldwin County, Alabama.  (Doc. 20 at ¶4, PageID.100).  On April 13, 2007,

Plaintiff entered into a real estate mortgage loan with Beneficial Alabama, Inc. (a non-party) for

$125,996.80.  (*Id.* at ¶9, PageID.101).  The loan was a purchase money mortgage.  (*Id.* at ¶14,

PageID.102).  Beneficial was the original servicer of Plaintiff's loan.  (*Id.* at ¶10, PageID.101).

Plaintiff's loan initially required two-hundred and forty (240) payments of $1,097.42, at an

interest rate of 9.229 %.  (Doc. 20 at ¶13, PageID.102).

---

[1] Defendant Citibank N.A. as Trustee for CMLTI Asset Trust ("Citibank") also joins in Fay's Motion to Partially Dismiss
Plaintiff's Complaint for the reasons outlined in Fay's Motion.  (Doc. 44, PageID.206).

Plaintiff defaulted on his mortgage in 2010. (Doc. 20 at ¶17, PageID.103). Following his default, Beneficial foreclosed on Plaintiff's home on April 9, 2010. (*Id*.). Plaintiff alleges he was unaware of the foreclosure until an ejectment action was filed against him in the Baldwin County Circuit Court. (*Id.* at ¶18, PageID.103). In response to the ejectment action, Plaintiff counterclaimed against Beneficial, alleging the foreclosure was void due to insufficient notice. (*Id*. at ¶19). Plaintiff filed for Chapter 13 Bankruptcy on August 19, 2010. (*Id*. at ¶20). Plaintiff and Beneficial reached a settlement regarding his mortgage payments some time in August 2011, and the Bankruptcy Court approved that agreement two (2) months later. (*Id.* at ¶¶20, 25, PageID.103 – 104). The settlement provided the following: (1) Plaintiff's interest rate was adjusted to 5.25%; (2) Plaintiff's loan term was extended to 360 months; (3) Plaintiff's monthly payment was reduced to $670.61; (4) the loan principal was determined to be $121,442.92; (5) Plaintiff's delinquent interest amount was determined to be $19,690.00; (6) Plaintiff's remaining fees and property taxes was determined to be $3,479.30; and (7) Plaintiff's "Lender Placed Insurance" amounted to $2,028.99. (*Id*.). Thereafter, Plaintiff had several other disagreements with Beneficial regarding repayment of his loan as adjusted by the settlement agreement. (*Id.* at 29 – 31, PageID.104).

Plaintiff's mortgage was sold to LSF9 Matter Participation Trust on May 1, 2015. (Doc. 20 at ¶34, PageID.104). After Plaintiff's loan was sold, Defendant Caliber began servicing Plaintiff's mortgage. Caliber considered Plaintiff's loan in default when it began its servicing efforts. (*Id.* at ¶¶35 – 36, PageID.104 – 105). After a dispute with Caliber over the amount owing on his loan, Plaintiff and Caliber reached an agreement that Plaintiff had a remaining balance of $112,437.69.

(*Id.* at ¶38).[2]   The agreement also deferred $30,488.26, in amounts owing other than the principal.  (*Id.* at ¶41).

Servicing authority was transferred to Fay on October 31, 2018, (Doc. 20 at ¶55, PgeID.106), and ownership of Plaintiff's loan was transferred to Citibank on September 9, 2019. (*Id.* at ¶ 56).  Fay and Citibank considered Plaintiff's loan in default at the time each assumed their respective servicing duties and ownership.  (*Id.* at ¶57).  Sometime after Fay began servicing Plaintiff's loan, a disagreement developed between them concerning the loan balance and the status of his account.  (*Id.* at ¶63).  Plaintiff contends Fay sent him monthly statements requesting he pay amounts not owing on his loan.  (*Id.* at ¶64).

Plaintiff sent his first Notice of Error ("NOE") to Fay on November 13, 2018, to an address designated on Fay's website for "Inquiries and Other Written Correspondence."  (*Id.* at ¶¶65 – 66, PageID.107 – 108).  Fay did not respond.  Plaintiff sent Fay a second NOE on January 26, 2019, to an address designated on Fay's website for "Notices of Error or Information Requests."  (*Id.* at 20 ¶68, PageID.108).  Fay also failed to respond to this letter.  (*Id.* at ¶69).  Plaintiff sent a third NOE to Fay on February 18, 2019, to every address visible on Fay's website.  (*Id.* at ¶70).  In each NOE, Plaintiff complained his payments were being inappropriately applied to his outstanding balance.  (*Id.* at ¶77).  Fay acknowledged Plaintiff's last NOE on February 27, 2019, and informed him it intended to respond in thirty (30) days.  (*Id.* at ¶69).  Fay responded to Plaintiff on March 11, 2019, only addressing Plaintiff's concern relating to deferred amounts owing on his loan.  (*Id.*

---

[2] Plaintiff originally named Caliber as a Defendant to this action.  However, Plaintiff dismissed his claims against Caliber with prejudice on April 15, 2020.  (Doc. 50).

at ¶73).   Plaintiff further contends the "transaction history" he received from Fay as a consequence of this NOE was illegible.  (*Id.* at ¶76).

Plaintiff commenced this action on October 21, 2019.  (Doc. 1).  Thereafter, Plaintiff filed an Amended Complaint.  (Doc. 20).  Plaintiff's Amended Complaint consists of five (5) claims.  In Count I, Plaintiff alleges Fay violated 12 U.S.C. §2605(e) ("RESPA") by failing to conduct any reasonable investigation of the errors described in Plaintiff's letters and failing to correct his account to reflect the terms of his prior agreement.  Plaintiff also alleges, under this claim, Fay failed to timely acknowledge and respond to Plaintiff's NOE's and failed to comply with the requirements of 12 CFR §1024.35(d) ("Regulation X") regarding its obligations to respond to Plaintiff's letters and failing to address Plaintiff's account.  (Doc. 20, PageID.111).  In Count II, Plaintiff alleges Fay violated 15 U.S.C. § 1692 (the "Fair Debt Collection Practices Act" or "FDCPA") by attempting to collect amounts that were not owing, and/or attempting to collect a debt by use of false, deceptive, and/or misleading statements aimed at coercing Plaintiff to pay.  (*Id.* at PageID.113).  Plaintiff's final counts, Counts IV and V, are for negligence *per se* and wantonness.

In Count VI, Plaintiff alleges Fay breached duties of care imposed by RESPA and its corresponding regulations by failing to review his file and accurately account for payments he made.  (*Id.* at PageID.116).  Also under this claim, Plaintiff alleges Fay breached the statutory duty of care imposed by the FDCPA for collecting amounts not owing and "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property when there is no present right to possession of [Plaintiff's] property."  (*Id.*).  In his wantonness claim (Count V) Plaintiff alleges Fay failed to accurately account for Plaintiff's payments, improperly applied

Plaintiff's payments to his loan balance, and imposed charges it knew or should have known were incorrect.  (*Id*. at PageID.117).[3]

## II.    STANDARD OF REVIEW

Rule 12(b)(6) requires the Court to construe "the complaint in the light most favorable to the plaintiff and accept[] all well-pled facts alleged . . . in the complaint as true."  *Austin v. Auto Owners Ins. Co.,* 2012 U.S. Dist. LEXIS 105862, *5 n. 2 (S.D. Ala. 2012); *see also Boyd v. Medtronic, PLC*, 2018 U.S. Dist. LEXIS 69962, *7-8 (N.D. Ala. 2018) ("This Court . . . 'assume[s] the[] veracity' of the complaint's 'well-pleaded factual allegations' and 'determine[s] whether they plausibly give rise to an entitlement to relief.'"]) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

To withstand a motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face, so as to nudge a claim across the line from conceivable to plausible.  *See Iqbal*, 556 U.S. at 678 – 680.  A claim is facially plausibile when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678; *see also Austin,* 2012 U.S. Dist. LEXIS 105862, at *16 ("The complaint must 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (*quoting Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010)).

Review of the complaint is a context-specific task that requires the Court to draw on its judicial experience and common sense.  *Iqbal*, 556 U.S. at 679.  "Although notice pleading does

---

[3] Fay concedes Plaintiff adequately pled his RESPA and FDCPA claims and does not seek dismissal of them at this time. (Doc. 31, PageID.153 – 154). Fay, however, contends it is entitled to dismissal of Plaintiff's Breach of Contract claim. (*Id.* at PageID.154).  Plaintiff concedes dismissal of his Breach of Contract claim as to Fay is appropriate. (Doc. 37, PageID.169).  Accordingly, the Court dismisses Plaintiff's Count III (Breach of Contract) as to Defendant Fay.

not require a plaintiff to specifically plead every element of his cause of action, a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *AFL-CIO v. City of Miami*, 637 F.3d 1187, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 – 84 (11th Cir. 2001)).

Minimum pleading standards "require[] more than labels and conclusions." *Young v. Midwest Recovery Sys.*, 2019 U.S. Dist. LEXIS 213587 *14 (S.D. Ala. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  General accusations and "a formulaic recitation of the elements of a cause of action will not do." *Id*.

## III.   DISCUSSION

Fay contends the Court should dismiss Plaintiff's negligence *per se* and wantonness claims regarding its loan servicing because Alabama law does not recognize such claims.  (Doc. 31, PageID.154).  In response, Plaintiff contends the Court should deny Fay's Motion because his negligence *per se* and wantonness claims are based on the violations of a duties prescribed by the FDCPA, RESPA, and Regulation X.  (Doc. 37, PageID.172).  In sum, Plaintiff argues as follows.  Alabama law recognizes *per se* tort liability premised on violations of statutory and regulatory duties.  (*Id.*, PageID.173).  The FDCPA, RESPA, and Regulation X prescribe duties to debt collectors and loan servicers.  (*Id*.).  Because Plaintiff's negligence *per se* and wantonness claims arise from violations of federal duties, and because Plaintiff has suffered the injuries those authorities contemplate, his claims should withstand Defendant's Motion.  (*Id.*, PageID.173 – 176).[4]  In Reply,

---

[4] Plaintiff does not specify which authority creates a duty for his wantonness claim.  (*See* Doc. 20, PageID.117). Plaintiff's argument on his wantonness claim is as follows:

Fay relies upon a line of precedent which, it contends, demonstrates Alabama law specifically forbids the negligence *per se* and wantonness claims as presented in Plaintiff's Opposition.  (Doc. 38, PageID.178 – 181).[5]

Plaintiff presents several arguments in his Sur-Reply, which, he contends, require the Court to deny Fay's Motion.

Plaintiff first contends Fay's argument that its duty to Plaintiff is contractual fails because Plaintiff is not in contractual privity with Fay.  (Doc. 51, PageID.223).  Because the parties are not in contractual privity, Plaintiff contends, Defendant's Motion should be denied.  Plaintiff also contends the precedent Fay relies upon is inapplicable to the instant case for the same reason. Further, Plaintiff contends, Alabama law has long recognized *per se* tort liability based upon statutory and regulatory duties, but that other courts' failures to properly address the present issue has left the judicial system bereft of "an in depth explanation of any policy basis for

---

Under the facts as alleged in the Amended Complain [,] Fay is also liable for wantonness. "'Wantonness' is statutorily defined as 'Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20(b)(3)"). *Bozeman v. Cent. Bank of the S.,* 646 So. 2d 601, 603 (Ala. 1994).  As with the negligence claim, the violation of a statutory duty can form the basis of a wantonness claim. *See, e.g., Autauga Cty. Emergency Mgmt. Commc'n Dist. v. Bellsouth Telecommunications, LLC,* 2016 WL 5848854, at *8 (N.D. Ala. Oct. 6, 2016) (allegations of violation of state statute sufficiently formed basis of wantonness claim under Alabama law).

Violation of a [f]ederal consumer protection statute amounts to wantonness. *See Rigby v. FIA Card Servs., N.S.,* 490 F. App'x 230, 237 (11th Cir. 2012) ("[B]ecause Rigby adequately pleaded the FCBA claim, and that statutory claim meets the requirements for supporting a negligence *per se* claim under Alabama law . . . we also conclude that Rigby alleged sufficient facts relating to his claims for negligence and wantonness").

(Doc. 37, PageID.176).

[5] After Defendant filed its Reply, Plaintiff filed a Motion to Strike, or, in the Alternative, to Disregard Portions Thereof. (Doc. 43).  After a telephonic hearing, the Court denied Plaintiff's Motion and permitted Plaintiff to file a Sur-Reply.

exempting [loan servicers] from general tort liability applicable to every other actor in society[.]". (Doc. 51, PageID.224).  Plaintiff contends this purported policy inconsistency requires the Court to re-examine the issue afresh and find in his favor.

Next, Plaintiff contends his contractual relationship with Beneficial (which was eventually transferred to Citibank) does not prevent his claims of negligence *per se* and wantonness regarding the servicing of his loan.  (Doc. 51, PageID.225).  Rather, Plaintiff contends, Alabama law recognizes that, even in actions founded principally on a contractual relationship, tort liability as to third parties can arise.  (Doc. 51, PageID.227).

Third, Plaintiff argues his wantonness claim should survive Defendant's Motion based on this Court's decision in *Givens v. Saxon Mortg.  Servs., Inc.,* 2014 WL 2452891 (S.D. Ala. June 2, 2014).  Plaintiff contends that, like the plaintiff in *Givens*, he seeks recovery for emotional distress, and these damages preclude dismissal.

Finally, Plaintiff reasserts his earlier Opposition argument, contending Fay violated its statutory and regulatory duties.  Plaintiff contends that because Fay violated these duties, combined with the reasoning in *Rawlings v. Dovenmuehle Mortg., Inc.,* 64 F. Supp. 2d 1156 (M.D. Ala. 1999), the Court must deny Defendant's Motion.  (*Id.*, PageID.227 – 229).  Plaintiff also requests that, alternative to denying Defendant's Motion, the Court certify the question of whether such causes of action exist to the Alabama Supreme Court.  (*Id.*, PageID.231 – 232).

**A.	Plaintiff's request for certification is due to be denied because the question is not close, sufficient authority exists to guide the Court's analysis, and principles of comity and federalism will not be contravened by reaching a decision in this matter.**

The Court first turns to Plaintiff's request for certification to the Alabama Supreme Court. Rule 18 of the Alabama Rules of Appellate Procedure provides federal courts may certify

"determinative" questions of law where "there are no clear controlling precedents in the decisions of the Supreme Court of this State" to receive "instructions concerning such questions or propositions of state law[.]"  Ala. R. App. P. 18(a).  Courts consider the following factors when deciding whether to certify a question to the Alabama Supreme Court: (1) the closeness of the question; (2) the existence of sufficient sources of state law; (3) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; (4) the likelihood of recurrence of a particular issue; and (5) the practical limitations of the certification process.  *Arnold v. State Farm Fire and Casualty Company*, 2017 WL 5451749, *4 (S.D. Ala. 2017) (citing *Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924 (11th Cir. 1986)); *see also Heatherwood Holdings, LLC v. First Commer. Bank*, 61 So.3d 1012, 1026 (Ala. 2010) (declining to answer a certified question where Alabama law was sufficient to guide the court in answering the certified question).

Plaintiff contends the Court must certify the following question: "[g]iven the rule, articulated principally in Alabama [f]ederal district courts, that Alabama law does not recognize the tort of negligent mortgage servicing, are mortgage servicers exempt from the recognized rule that tort liability may be premised on the violation of a statute or regulation?"  (Doc. 51, PageID.231).  The Court finds the answer to this question is not close, sufficient sources of state law exist to guide the Court's analysis, and principles of comity and federalism[6] are not contravened by reaching a decision in this case.

---

[6] *Roe v. Mobile Cty. Appointment Bd.*, 676 So.2d 1206, 1218 (Ala. 1995) ("The procedure providing for certified questions was adopted to further the return to federalism in this country.").

As has been noted in this Court, "there is a veritable avalanche" of authority recognizing Alabama law does not recognize claims of negligent or wanton loan servicing.  *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1198 n. 8 (S.D. Ala. 2015) (collecting cases); *see also Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1209 (M.D. Ala. 2012); *U.S. Bank v. Shepherd*, 202 So.3d 302, 314 – 315 (Ala. 2015) (finding no wanton loan servicing claim exists under Alabama law); *Bennett v. Nationstar Mortgage, LLC,* 2015 WL 5294321, *5 (S.D. Ala. Sept. 8, 2015) (quoting *James*, 2015 U.S Dist. LEXIS 28762, at *26 – 27)[7]; *Gregory v. Select Portfolio Servicing,* 2016 U.S. Dist. LEXIS 117596, *27 (N.D. Ala. Aug. 31, 2016); *Diehl v. PayMap, Inc.,* 2018 U.S. Dist. LEXIS 55760, *4 – 5 (S.D. Ala. Apr. 19, 2018).

Though Plaintiff distinguishes the authorities above because, *inter alia,* those claims, generally, were not *per se* tort claims like his, this Court has addressed Alabama's approach to such claims.  *See James*, 92. F. Supp. 3d at 1200 n. 9 ("[F]ederal courts in Alabama have given short shrift to similar efforts invoking the doctrine of negligence *per se* to outflank the phalanx of case authorities holding that Alabama law does not recognize a cause of action for negligent or wanton loan servicing.").  Significantly, when the Alabama Supreme Court found no claim for wanton loan servicing to exist under Alabama law in *Shepherd*, it endorsed this Court's conclusion on that issue.  *Shepherd*, 202 So.3d at 314 – 315.  There, relying on this Court's analysis in *James,* the *Shepherd* court found the trial court erred by entering judgment in the appellee's favor on their wantonness claim because

---

[7] The parenthetical includes the original citation before *James'* incorporation into Federal Reporter.  That quotation may be found at  *James*, 92 F. Supp. 3d 1190, 1200 n.9 (S.D. Ala. 2015).

the relationship between the Shepherd and the Trust is based upon the mortgage and is therefore a <u>contractual</u> one; that is to say, "the duties and breaches alleged by [the Shepherds] clearly would not exist but for contractual relationship between the parties." ... This Court has held that the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim. ... Following this principle, federal courts applying Alabama law have repeatedly rejected attempts to assert wantonness claims based on a lender's actions handling and servicing a mortgage once the mortgage is executed. . . . The *James* court has correctly stated Alabama law as it applies to claims alleging that lenders have acted wantonly with regard to servicing and handling mortgages.

*Shepherd*, 202 So.3d 302, 314 – 315 (emphasis in original, internal citations omitted).  This Court

subsequently found *Shepherd's* reliance on *James* controlling on negligence claims against loan

servicers.  In *McCleary v. DLJ Mortg. Capital, Inc.*, the court concluded:

"The *James* court has correctly stated Alabama law as it applies to claims alleging that *lenders* have acted *wantonly* with regard to servicing and handling mortgages." *U.S. Bank National Association v. Shepherd*, 202 So. 3d 302, 315 (Ala. 2015) (emphasis added). Because *Shepherd* did not involve a negligence claim, or any claim against a servicer, the italicized words do not indicate disagreement with this Court's application of the same rule to negligence claims or to claims against servicers. Nor does the plaintiff argue that the rule is or should be different when the claim is brought against a servicer with which the plaintiff is not in a contractual relationship. *See generally Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) (explaining the rule as applied to servicers).

2017 U.S. Dist. LEXIS 167908, *8 n.6 (S.D. Ala. Oct. 11, 2017)

Considering *Shepherd's* endorsement of *James*, the Court finds certification unnecessary.

Specifically, the Court finds the significant amount of precedent available and the Alabama

Supreme Court's endorsement of *James* clearly indicate the question is not close, sufficient

authority exists to answer the questions before the Court, and principles of comity and federalism

will not be contravened by proceeding.[8]    Further, as detailed *infra*, Plaintiff's efforts to circumvent Alabama's general prohibition on claims of negligent and/or wanton loan servicing by pursuing them on a statutory or regulatory basis does not preclude their dismissal.  Rather, Plaintiff's attempts to "engraft a negligence cause of action onto a statute that already includes its own set of remedies and means of obtaining them and a statute, in the absence of which, no [] comparable common-law claim would exist" is futile in light of *Shepherd* and other decisions. *Gregory v. Select Portfolio Servicing*, 2016 U.S. Dist. LEXIS 117596, *26 – 27 (N.D. Ala. Aug. 31, 2016) (quoting *Guy v. Alabama Power Co.,* 2013 U.S. Dist. LEXIS 3929858, at *4 (M.D. Ala. July 29, 2013)).

> **B.    Plaintiff's negligence *per se* and wantonness claims are due to be dismissed.**
>
> > **1.    Plaintiff's argument on the lack of contractual privity between he and Fay is unavailing.**

Plaintiff's argument regarding his lack of privity with Fay is straightforward.  In sum, Plaintiff contends because he and Fay are not in contractual privity, Alabama's law which holds that the only duties imposed upon loan servicers to borrowers arise from contract should not apply to his claims.  (Doc. 51, PageID.223 – 224).  Moreover, Plaintiff contends, the cases which address this issue fail to provide sufficient analysis on *why* such a rule exists.   (Doc. 51, PageID.224).  Plaintiff's argument here has been addressed in an earlier decision by this Court.

---

[8] The Court notes Plaintiff argues both the FDCPA and RESPA impose statutory duties upon Fay for servicing and collecting amounts owing on Plaintiff's loan.  Though the bulk of case law discussed above relates specifically to RESPA, the Court reaches the same conclusion as to Plaintiff's negligence *per se* and wantonness claims premised on a statutory duty imposed by the FDCPA.  As other courts have acknowledged, FDCPA does not impose a duty upon servicers. *See Thompson v. Resurgent Capital Servs., L.P.,* 2015 U.S. Dist. LEXIS 41639, *77, 2015 WL 1486974 (N.D. Ala. March 31, 2015) ("But just as Defendants' putative violations of the FDCPA do not constitute negligence under Alabama law, they also do not constitute wantonness.").

In *Diehl v. PayMap, Inc.*, this Court found the plaintiff's negligence claim based on facts concerning loan servicing withstood the defendant's motion to dismiss, but only because the complaint alleged the defendant "had nothing to do with servicing Diehl's mortgage, but merely administered an add-on program" and "forward[ed] [funds received from Diehl's bank account] to LoanCare to be directed to the mortgage company."  2018 U.S. Dist. LEXIS 65760, *8 (S.D. Ala. Apr. 19, 2018).  The *Diehl* court noted that "as contractual relationships become attenuated from the mortgage and note, the *James / Shepherd* strand of decisions gives way to the *QORE[, Inc. Bradford Bldg. Co.,* 25 So.3d 1116 (Ala. 2009)] principle that a plaintiff who is a stranger to a contract may have a claim in negligence under Alabama law against a defendant who breached that contract." *Id*.[9]

Plaintiff does not allege Fay's relationship with the note and mortgage are so attenuated as to match the facts in *Diehl*.  Plaintiff cannot so allege because Fay, unlike the defendant in *Deihl*, is a servicer whose duties exist solely by way of contract.  Considering Fay owed no duty beyond what is contained in Plaintiff's contract, the Court finds Plaintiff's argument unavailing and shall not depart from the line of precedent on this matter as endorsed by the Alabama Supreme Court.

_____

[9] The court in *Prickett v. BAC Home Loans & Bank of Am., N.A.*, 946 F. Supp. 2d 1236 (N.D. Ala. 2013) faced an argument similar to the one presented here.  Though that court found the plaintiff failed to allege a statute or regulation supplied the duty the defendant allegedly breached, the court reasoned the plaintiff's negligence claim arising from contractual obligations could not proceed, stating:  "[A] borrower still cannot allege a tort claim for a mortgage servicer's negligent conduct because an agent to an agreement can "only incur tort liability . . . by causing *personal injury or property damages." Prickett,* 946 F. Supp. 2d at 1245 (N.D. Ala. 2013) citing *Blake v. Bank of Am. N.A.*, 845 F. Supp. 2d 1206, 1210 (emphasis in original).  Thus, the *Prickett* decision is consistent with others in emphasizing that the only duty a mortgage servicer has to a borrower arises in contract, thereby precluding any common law negligence claims.  *See Prickett,* 946 F. Supp. 2d at 1247 (citing *Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049, 1056 (Ala. 2003)) ("Furthermore, even if the Court takes Plaintiffs to be alleging simple common law negligence, the Complaint still fails to state a claim for which relief can be granted because . . . the only duty Plaintiffs allege was breached was created by contract.") (parenthetical omitted).

### 2.     Plaintiff's appeal to third-party liability is unavailing.

Plaintiff next argues his negligence *per se* and wantonness claims are not foreclosed merely because his relationship to Fay is contractual in nature.  (Doc. 51, PageID.225 – 226).  Rather, Plaintiff contends, *Blake* and the line of decisions following it, fail to "explain [] other than to cite to the existence of a contract, why borrowers should be carved out of [the] well-established rule" that tort liability extends to those who, while performing contractual duties, harm a third party.  (*Id*.).  In support of this argument, Plaintiff relies upon *QORE*, *Inc.,* 25 So.3d at 1124.  This precise argument was discussed in *Diehl*.  As noted *supra*, this Court found that plaintiff's negligence claim withstood the defendant's motion to dismiss because of the defendant's attenuated relationship to the underlying note and mortgage and because the defendant failed to respond to the plaintiff's articulation of Alabama law.  *Diehl*, 2018 U.S. Dist. LEXIS 65760, at *7 n.4.  The facts in *Diehl*, however, are not present here.  In fact, Fay's responsibilities as Plaintiff's servicer are tied directly to those documents.  In light of Fay's direct relationship with Plaintiff's note and mortgage, the Court is not persuaded to rule in contravention to *Blake* and its progeny.

### C.     The Court shall not take up Plaintiff's request to revisit *Blake*.

Finally, Plaintiff contends Defendant's Motion must be denied because his claims arise from statutory and regulatory duties aimed at protecting a class to which Plaintiff belongs.  (Doc 51, PageID.227).  Here, Plaintiff contends Alabama law recognizes that duties can arise from statutes and regulations.  Further, he contends, several decisions, particularly *Rawlings*, provide the necessary predicate to impose a duty upon loan servicers.  Plaintiff argues that because Alabama recognizes negligence *per se* and wantonness claims premised on statutory and

regulatory duties, the Court should disregard *Blake* and the line of cases following it and deny Defendant's Motion.

First, to the extent Plaintiff relies upon *Ranger v. Wells Fargo Bank N.A.,* 757 F. App'x 896 (11th Cir. 2018), the Court notes that case applied Florida law, not Alabama law.  *See Ranger,* 757 F. App'x at 904.  Though Plaintiff argues the Court should adopt the *Ranger* court's approach because Florida, like Alabama, recognizes *per se* tort liability based on violations of statutory duties, this does not address the Alabama Supreme Court's holding in *Shepherd.*  As to Alabama law, Plaintiff's reliance on *Rawlings* is also unavailing.  The *Rawlings* court found RESPA imposed a statutory duty upon loan servicers by operation of that statute.  *Rawlings*, 64 F. Supp. at 1167. However, as noted in *James*, the *Rawlings* court simply concluded a duty existed without providing further analysis on the matter.  Specifically, the *James* court noted:

> [n]ot surprisingly, *Rawlings* in no way considers (much less rebuts) the reasoning underlying such authorities, so it cannot support the proposition that these numerous recent federal cases have all interpreted and applied Alabama law incorrectly. Fourth, the Jameses' appeal to negligence *per se* cannot help them because the legal duties underlying their claims against FNMA and Nationstar arise in contract.  The statutes in play in this case regulate the contractual relationship between the Jameses and FNMA / Nationstar, but do not eliminate or supplant that contractual relationship; therefore, the reasoning of the line of authorities beginning with *Blake* (*i.e.,* that the obligations in question are rooted in contract rather than tort) remains fully intact . . .

*James*, 92 F. Supp. at 1200 n. 9.  Considering the Alabama Supreme Court's endorsement of *James*, the Court is not persuaded to abandon that line of precedent here.[10]

---

[10] To the extent Plaintiff relies on *Costine* and *Prickett* to argue courts have failed to address *per se* tort liability in substance, the Court notes both cases specifically stated the only duty a loan servicer is subjected to is one created by contract.  *See Costine v. BAC Home Loans*, 946 F.Supp. 2d 1224, 1234 (N.D. Ala. 2013); *Prickett v. BAC Home Loans & Bank of Am., N.A.*, 946 F. Supp. 2d 1236, 1247 (N.D. Ala. 2013) (citing *Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d

**D.      The damages Plaintiff seeks in his wantonness claim do not prevent its dismissal.**

Plaintiff contends the types of damages he seeks preclude dismissal of his wantonness claim.  Specifically, Plaintiff argues the *Givens* decision, which acknowledges emotional distress damages as a possible remedy to wantonness, requires the Court to deny Fay's Motion as to his wantonness claim.  In *Givens*, this Court acknowledged, as Plaintiff states, emotional distress damages were viable in a wantonness claim.  *Givens*, 2014 WL 2452891, at *15.  However, Plaintiff's framing of this issue puts the cart before the horse.  Before discussing damages, the Court must address the question of whether a duty existed in the first place.  Plaintiff premises a duty on the federal statutes and regulation noted above.  However, no such duty is prescribed there and there is no general duty regarding loan servicing.  *See Gregory v. Select Portfolio Servicing*, 2016 U.S. Dist. LEXIS 117596, at *26 – 27 (N.D. Ala. Aug. 31, 2016); *Thompson v. Resurgent Capital Servs., L.P.*, 2015 U.S. Dist. LEXIS 41639, 77 (N.D. Ala. March 31, 2015) (first citing *Prickett*, 946 F. Supp. 2d at 1244; then citing *Rawlings*, 64 F. Supp. 2d 1156 at 1168); *Prickett*, 946 F. Supp. 2d at 1244, 1247; (first quoting *Shepherd*, 202 So.3d at 315; then citing *Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049, 1056 (Ala. 2003)); *Diehl*, 2018 U.S. Dist. LEXIS 65760, at *4 – 5 (quoting *Shepherd*, 202 So.3d at 314).  Because there is no general duty regarding loan servicing, and Alabama does not recognize wantonness claims brought pursuant to a *per se* theory of liability under Plaintiff's cited authority, Plaintiff's claim fails as a matter of law.

---

1049, 1056 (Ala. 2003)) ("[E]ven if the Court takes Plaintiffs to be alleging simple common law negligence, the Complaint still fails to state a claim for which relief can be granted because . . . the only duty Plaintiffs allege was breached was created by contract.").

**CONCLUSION**

Defendant Fay Servicing, LLC's Motion to Partially Dismiss Plaintiff's Amended Complaint (Doc. 31) is granted.  Plaintiff's claims of negligence *per se* (Count IV) and wantonness (Count V) are **dismissed with prejudice.**

**DONE and ORDERED** this 14th day of October, 2020

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE