## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**JAMES R. DRIGGERS,**

      **PLAINTIFF,**

      **vs.**

**CALIBER HOME LOANS, INC., FAY
SERVICING, LLC., and CITIBANK NA
AS TRUSTEE FOR CMLTI ASSET
TRUST,**

      **DEFENDANTS.**

**Case No.: 1:19-CV-00850-JB-B**

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND EVIDENTIARY SUBMISSION

## INTRODUCTION

Plaintiff filed his Complaint and Demand for Jury Trial with this Court alleging breach of contract, among other things, that Defendant, Fay Servicing LLC ("Fay"), acting on behalf of CITIBANK NA. AS TRUSTEE FOR CMLTI ASSET TRUST ("Citibank"), violated the Fair Debt Collection Practices Act and other consumer protection statutes[1]. Mr. Driggers's Complaint was amended on December 9, 2019, to name the defendant Citibank correctly. Defendants have filed a joint Motion for Summary Judgment.[2]

## STATEMENT OF RELEVANT FACTS

1.     On April 13, 2007, the Plaintiff entered a Loan Agreement with Beneficial Financial 1, Inc. for $125,996.80. The loan was secured by his principal residence and is,

---

[1] Plaintiff has dismissed his claims against the Caliber Home Loans, Inc.
[2] Plaintiff's Negligence claims against Fay were dismissed by the Court on April 16, 2020 and are not addressed herein.

therefore, a consumer debt. Ex. 1 Mortgage and Ex. 2 Note.

2.      Mr. Driggers's loan was a fixed-rate loan with monthly principal and interest payments of $1,097.42 with an interest rate of 9.229 percent. The payments are due on the first of each month, but there is a grace period of fifteen calendar days before a payment is considered late. The Note allows the Lender to charge a late fee of 5% of the overdue payment if said payment is received after the fifteen-day grace period. Ex. 1 Mortgage and Ex. 2 Note.

3.      On May 1, 2015, Plaintiff's Mortgage Loan was sold to LSF9 Master Participation Trust, and on June 1, 2015, servicing was transferred to Caliber Home Loans. Ex. 4 Notice of Servicing Transfer to Caliber.

4.      Fay began servicing the loan on or about November 1, 2018. Ex. 5 Notice of Servicing Transfer to Fay.

5.       Fay is a Mortgage Loan Servicer. Ex. 6 at ¶ 59. Fay's Answer to Amended Complaint.

6.      Fay considered Driggers's loan to be in default at the time of the servicing transfer. Ex. 7 Monthly Statement. See also Ex. 18 Fay Notes and Memos at p 12.

7.      Fay is not reporting Mr. Driggers's loan to credit bureaus because his loan was "coded as a bankruptcy Chapter 7." Ex. 8 Paterno Deposition at p. 12.

8.      Fay services the Driggers Loan on behalf of Defendant Citibank NA. As Trustee For CMLTI Asset Trust. Ex. 8 Paterno Deposition at p. 20.

9.      For some time, Driggers has been unable to get his own insurance because neither Fay nor Caliber reported his mortgage obligation to any of the three major credit bureaus. Ex.25 Driggers Deposition at p. 75 and Ex. 18 at p. 11 (Fay 195) and p. 6, (Fay 190).

10.      Caliber renewed its force-placed insurance policy on Mr. Driggers property on

2

September 26, 2018, and the renewal premium was $1,914.00. Ex. 9 October 9, 2018, Caliber Statement.

11.    Upon transferring the loan to Fay, Caliber canceled the insurance on Driggers property. Ex. 5 Notice of Servicing Transfer to Fay.

12.    Driggers was current with his payments to Caliber the month before servicing was transferred to Fay.  Ex. 9 October 9, 2018, Caliber Statement. While Caliber was servicing the loan, a portion of Driggers payments was for the Lender placed insurance. *Id.*

13.    The insurance purchased by Caliber cost $1,914.00 per year. Ex. 9 October 9, 2018, Caliber Statement. The insurance purchased by Fay cost $2,106.00 per year. Ex. 10 March 11, 2019, Fay Letter.

14.    Caliber charged Driggers for property taxes during the years 2015 and part of 2016. Account Disclosure Statements from Caliber Ex. 11; Caliber 2016 Escrow Account Disclosure Statement and Exhibit 12, Caliber 2015 Annual Escrow Account Disclosure Statement.

15.    The servicing of Driggers's loan was transferred to Fay on November 1, 2018, and Fay received Caliber's "full Servicing file." Ex. 8 Paterno Deposition at p. 24. Numerous documents transferred to Fay from Caliber indicated that Driggers was property tax-exempt, including those listed above. As part of the transfer, Fay received the annual escrow disclosure statements Caliber sent to Driggers while it was servicing the loan. Ex. 14,  Ex. 15, and Ex. 18 at p. 11, p. 8, p. 7, p. 4, and p. 3.

16.    The Annual Escrow Account Disclosure Statements sent to Driggers by Caliber beginning September 21, 2016, and through April 2019 indicate that Caliber was no longer making an escrow charge for property taxes. Ex. 13 Additional Caliber Annual Escrow Account Disclosure Statements.

3

17.     From the beginning, Fay considered the Driggers account to be in default. The first entry in Fay's Notes and Memos dated November 6, 2018, states, "CALLED B1 PRIMARY #, NO ANSWER. REASON FOR COURTESY CALL DELINQUENCY." Ex 18 at p. 12.

18.     On December 17, 2018, Fay sent Driggers a letter inquiring about his insurance coverage for the home and informing him that Fay was a debt Collector. Ex.16 December 17, 2018, Fay Letter, Fay 28-31.

19.     Fay was aware that during his Chapter 7 Bankruptcy that Driggers reaffirmed his mortgage debt. Ex. 8 Paterno Deposition at p. 23.

20.     In February of 2019, Fay received three Notices of Error ("NOE") from Driggers at three different addresses. Ex. 17 February 18, 2019, NOE to 3 Addresses and Ex. 18 Fay Notes, Fay 193. His concerns can be summarized as follows:

Driggers's first Statement from Fay (Ex. 7 November 10, 2018, Fay Statement) indicated a payment of $635.00, and he wanted an explanation. He had made a payment of $604.08 on November 6, 2018. The payment was not shown on the Statement; He asked for a copy of the force-placed insurance policy; He wanted to know why his monthly payment was increasing; He requested a payment history. Finally, he asked about a phone call from Fay, indicating that his payment would increase a hundred dollars per month. Ex. 17 February 18, 2019, NOE.

21.     Fay responded on March 11, 2019, Ex. 24.

22.     Driggers's February 11, 2019, Monthly Statement was for $792.24. Ex. 19 February 11, 2019, This was an increase of $188.16 per month or $2,57.92 annually.

23.     As shown on Driggers's Escrow Account Disclosure Statement for January 2019 (Ex. 20 January 2019 Fay Escrow Account Disclosure Statement), the Escrow amounts being

4

collected included $369.52 for "COUNTY TAX." There was no mention in response to Driggers's Notice of Error that Escrow for property taxes was one reason for the increase. Fay continued to bill Driggers for nonexistent property taxes until October 2019, as indicated by his October statement. Ex. 21 October 2019 Fay Statement.

24.     March 21, 2019, Faye "RECEIVED EMAIL WITH TAX EXEMPT NOTICE FRO BORROWER' S PROPERTY." Ex. 18 Fay Notes and Memos at p. 8. However, Fay continued to bill Driggers for nonexistent property taxes until October 2019. His October statement indicates this. Exhibit 21.

## ARGUMENT

### I.     Summary Judgment Standard

The entry of Summary Judgment is appropriate, where there are no material issues of fact. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 247–248, (1986).  Material facts are, and only disputes over facts that might affect the outcome of the case will defeat Summary Judgment. *Id.* at 248, 106 S. Ct. at 2510.  A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party." *Id.*  Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the movant has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing Summary Judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevent its entry. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 US 547, 586–587, (1986).  It is not sufficient for the party opposing summary judgment to provide a scintilla of evidence supporting its case. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 US at 2512.

In *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985), the Eleventh Circuit applied the "least sophisticated consumer standard" to the FDCPA, saying, "we adopt the

*Exposition Press* standard of "least sophisticated consumer" as previously followed by the federal courts in *Baker, supra,* and *Bingham*[.]" *Id.* At 1175. There is no dispute of facts regarding the actions of Fay.

**II.     Plaintiff Purchased a Home and Incurred a Mortgage Debt.**

On April 13, 2007, the Plaintiff entered a Loan Agreement with Beneficial Financial 1, Inc. for $125,996.80. The loan was secured by his principal residence and is, therefore, a consumer debt. Ex. One  Mortgage.  Servicing of the Mortgage Loan was transferred to Caliber, and Fay began servicing it on November 11, 2018. Ex 8 Paterno Deposition at p. 24. It is undisputed that Fay considered the loan to be in default when it assumed servicing. Ex. 7 November 10, 2018, Fay Statement.

**III.     Fay Did Not Properly Respond To Driggers's Notice Of Error And Request For Information.**

When Fay assumed servicing, according to its Rule 30(b)(6) representative, it obtained Caliber's "full servicing file." In Caliber's documents, there is a mountain of evidence that Mr. Driggers was exempt from the payment of property taxes. Documents such as Caliber's Annual Escrow Account Disclosure Statements indicate that no property was due. Even the most cursory review of those documents would have shown Fay that fact.

In the NOE, Ex. 17 February 18, 2019,  Driggers stated that he had made a payment of $604.08 on November 6, 2018, and this payment was not shown on his Statement. Ex. 23 Fay November 10, 2018, Mortgage Statement, Fay 55-56. Instead, the Statement indicated that his payment was over 30 days past due. Driggers wanted an explanation but never got one. The only payment is shown on the Statement dated November 10, 2018, under the heading "Past Payments

Breakdown," was $635.00 for Escrow. Under the heading "Explanation of Amount Due," the Statement indicated that Driggers owed two payments of $604.08 for a total of $1,208.16.

The NOE response did not address the incorrect Mortgage Statement but instead stated that a payment of $604.08 was applied on Driggers's "November 1, 2018, monthly mortgage payment." This was incorrect. See Ex. 23, Fay's November 10, 2018 Mortgage Statement.

With the response, Fay sent 75 pages of documents. Ex. 24 Fay Response to NOE. In the first three pages, the response claimed that Driggers's November 10, 2018 (Ex. 23) Statement was correct and that the principal balance of $140,888.61 was correct. Finally, it stated that Mr. Driggers's payment was going up a hundred dollars ($100.00) per month to pay for hazard insurance. However, the response made no mention of the failure to credit his payment of $604.08 or why. Fay provided a payment history that included payments from 11/01/2018 to 03/08/2019, but no explanation for the 11/10/2018 Mortgage Statement indicating that he had missed a payment. For the remainder of the payment history, Fay 65-79 was illegible, and Driggers could not tell if Fay was correctly applying his payments.

Mr. Driggers also wanted to know why his payment was going up $100 per month. In the response, he was informed that insurance would be forced placed on his property, but there was no mention of the added charge for property taxes included in that payment increase.

Fay cites *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1135 (11th Cir. 2014) for the proposition that a "servicer's response was sufficient where it provided reasons supporting its belief that the account was correct, regardless of whether the borrower was confused and/or unsatisfied with this answer." In *Bates,* however, a "breakdown in communication between Bates and Chase as to the details of the September payment's return, albeit in part due to the fault of both parties, did not cause Bates damages." *Id*. at 1135. "It is reasonable to infer from the different

outcomes in *Bates*, on the one hand, and *Renfroe* and *Nunez*, on the other, that the Eleventh Circuit interprets Regulation X as having expanded a servicer's obligations concerning responding to borrower inquiries under RESPA." *McGahey v. Fed. Nat'l Mortg. Ass'n,* 266 F. Supp. 3d 421, 439 (D. Me. 2017).

Here, Driggers has incurred damages. He has suffered worry and mental anguish damages and has made escrow payments for nonexistent property taxes.

"Account errors are broadly defined by § 1024.35(b), which includes a residual category for "[a]ny other error relating to the servicing of a borrower's mortgage loan." *Nunez v. J.P. Morgan Chase Bank, NA*, 648 F. App'x 905, 907 (11th Cir. 2016). The failure to properly apply Driggers's November 2018 payment was an accounting error. Without an explanation or a legible payment history, it would be impossible for Driggers to determine if his payments were applied correctly. "If servicers want to try to shelter behind their RESPA response letters, they must provide a more comprehensive, supported explanation of their findings[.]" *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016).

IV.    **Fay is Subject to the Fair Debt Collection Practices Act**

In Fay's November 2018 Statement, the amount due was stated as $1,208.16. Under the explanation of the amount owing, it was indicated that Driggers was behind by one payment of $604.08, which he was not. The Fair Debt Collection Practices Act (FDCPA) applies here because Fay is a debt collector as defined by the Act under the undisputed facts. Also, Fay's "Notes and Memos" indicate that Mr. Driggers's loan was considered to be in default. The very first entry in the Notes and Memos stated, "CALLED B1 PRIMARY #, NO ANSWER. REASON FOR COURTESY CALL DELINQUENCY."

Money owed under a promissory note secured by the debtor's home is a debt within the meaning of the FDCPA. See *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012). "In order to establish a violation of the FDCPA, a plaintiff must demonstrate three elements: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Id.* at 1216. Attempts to collect such a secured debt, even made in connection with the enforcement of a security interest, nevertheless falls within the scope of the FDCPA. *Id*. at 1217-1218 (rejecting argument that debt secured by mortgage and actions taken related to foreclosure are exempted from definition of a debt); *see also Birster v. Am. Home Mortgage Servicing, Inc.*, 481 F. App'x 579, 582 (11th Cir. 2012)(same); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir.2010) (letter threatening foreclosure while also offering to discuss foreclosure alternative is an attempt to collect a debt under FDCPA); *Wilson v. Draper & Goldberg,* PLLC, 443 F.3d 373, 376 (4th Cir.2006) ([The] debt remained a debt even after foreclosure proceedings commenced); *Piper v. Portnoff Law Assocs., Ltd*., 396 F.3d 227, 234 (3d Cir.2005) (fact that collection letter threatening execution of a lien is an attempt to collect a debt).

There is no doubt that Fay is also a debt collector here.  That term is defined under the FDCPA as follows:

> The term debt collector means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).

Excluded from that definition is any person collecting, or attempting to collect, any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.15 U.S.C. § 1692a(6)(F)(iii). Applying these terms to mortgage servicers follows the well-established rule articulated in *Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir.1985): "[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry*, 756 F.2d at 1208; see also *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012); *Belin v. Litton Loan Servicing, LP,* 2006 WL 1992410 (MD Fla. July 14, 2006).

In *Bourff,* the Eleventh Circuit held that allegations that BAC (a mortgage servicer) acquired the plaintiffs loan after the loan was in default adequately plead BAC's status as a debt collector under the FDCPA. *Bourff*, 674 F.3d 1238, 1241. Many other courts have held the same. See e.g. *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 501 (7th Cir. 2008) ("[T]he purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself."); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106 (6th Cir. 1996); *Hope v. BSI Fin., Inc.,* 2012 WL 5379177 (ND Ala. October 26, 2012)(Plaintiff sufficiently plead that servicer was a debt collector where he alleged that servicer acquired the loan after it was in default); *Eke v. FirstBank Florida,* 779 F. Supp. 2d 1354, 1357 (SD Fla. 2011)("Debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); *LaCosta v. McCalla*

*Raymer, LLC,* 2011 WL 166902 (ND Ga. January 18, 2011) (Legislative history of FDCPA indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.); *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252 (MD Fla. June 6, 2012)(same); *N. Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1335-36 (MD Fla. 2009)("It is undisputed that North Star bought the debt of counterclaim Plaintiff after it had already become delinquent . . .. This fact alone would seem to establish North Star's status as a debt collector.").

Fay falls within the debt collector status in at least two ways.  First, as stated above, it is undisputed that Fay's sole business is mortgage servicing, which, at its core, involves the collection of a debt owed to a separate entity. This places Fay squarely within the definition of debt collector as any business. . .who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 USC § 1692a(6). The second aspect to the definition that applies to Fay, in this case, is the interpretations described above which, when addressing mortgage servicing and the exception in § 1692a(6)(F)(III) (applying to debt transferred prior to default), hold that a mortgage servicer which is assigned servicing rights of a debt in default is covered under the Act.

### V.      Fay Attempts Collection of Amounts Not Owing.

With its initial Mortgage Statement claiming Driggers was in default Fay was attempting to collect payments that Mr. Driggers did not owe. Subsequent to that, when Fay began servicing each it collected amounts for Escrow for nonexistent  property taxes January 2019 until October 2018 when it had it in its files evidence that Mr. Driggers was exempt from payment of those amounts. For approximately ten months Fay collected escrow amounts that were not owing.

Attempting to collect money that is not owed violates the FDCPA See *Goodin v. Bank of Am., NA*, 114 F. Supp. 3d 1197 (MD Fla. 2015) "Bank's foreclosure complaint that misrepresented the amount owed was a communication made in connection with the collection of a debt that violated the Fair Debt Collection Practices Act (FDCPA)." Moreover, "the statute plainly states that an 'attempt to collect' an unauthorized debt is as forbidden as the actual collection would be *Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1568 (MD Fla. 1996).

### VI.   Breach of Contract by Citibank

Mr. Driggers's Mortgage requires the payment of escrow items such as  Ex 1 at Fay p. 119 paragraph 3 requires the payment of "Escrow Items" such as property taxes and insurance. Pursuant the Mortgage, however, a lender can only collect sums for property taxes if failure to pay them "can attain priority over the mortgage." Fay and Citibank have breached the Mortgage by collecting escrow payments for nonexistent property taxes. The relevant portion of Driggers's Mortgage States:

> Funds for Escrow items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for; **(a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the property;** (b) leasehold payments or ground rents on the property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items". (Emphasis added).

There is no authority in the Driggers's Mortgage or note that Allows collection of nonexistent property taxes.

## CONCLUSION

Because the undisputed facts establish that at all material times Fay was a debt collector engaged in the collection of debt with respect to Driggers's loan, and that Citibank breached the Mortgage agreement by the collection of property tax that was not owing their Motion For Summary Judgment should be denied.

*/s/Earl P. Underwood, Jr.*
**EARL P. UNDERWOOD, JR.**
**Attorney for Plaintiff**

**OF COUNSEL:**
**UNDERWOOD & RIEMER, P.C.**
**21 S Section Street**
**Fairhope, Alabama 36532**
**Phone:   251.990.5558**
**Email: epunderwood@alalaw.com**

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020 the foregoing was served upon all counsel of record CM/ECF filing system.

*/s/Earl P. Underwood, Jr*
**Earl P. Underwood, Jr.**

13

14