IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. DRIGGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:19-00850-JB-B |
| | ) |
| CALIBER HOME LOANS, INC., et al | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND OPINION**

This matter is before the Court on Defendants Fay Servicing, LLC ("Fay") and Citibank, N.A., as trustee for CMLTI Asset Trust's ("Citibank") Motion for Summary Judgment (Doc. 56), and Plaintiff Driggers' ("Plaintiff") Partial Motion for Summary Judgment (Doc. 59). A hearing was held on all motions before the Court on April 21, 2021. Based on the testimony at the hearing, and the filings before the Court, the Motions are ripe for review.

**I. PROCEDURAL HISTORY**

Plaintiff commenced this action on October 21, 2019, against Fay and Caliber Home Loans, Inc. (Doc. 1), and, thereafter, amended his Complaint to add Citibank (Doc. 20). Plaintiff's Amended Complaint consists of five (5) claims, three of which remain, against two of the three defendants: Fay and Citibank.[1] In Count I, Plaintiff alleges Fay violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), by failing to conduct any reasonable investigation

---

[1] Caliber Home Loans ("Caliber") was dismissed on Plaintiff's and Caliber's Motion on April 15, 2020. (Doc. 50).

1

of the errors described in letters sent by Plaintiff; failing to correct his account to reflect the terms of his prior agreement; and failing to timely acknowledge and respond to Plaintiff's Notice of Errors (NOEs).  In Count II, Plaintiff alleges Fay violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by attempting to collect amounts that were not owing.  (*Id.*). In Count III, Plaintiff alleges both Citibank and Fay breached the underlying note and mortgage.

## II.   BACKGROUND

In 2007, Plaintiff purchased a house in Baldwin County, Alabama.  (Doc. 20 at ¶4).  Plaintiff financed the house through a mortgage loan with Beneficial Alabama, Inc. (a non-party) for $125,996.80.  (*Id.* at ¶9).  Between 2007 and 2018, Plaintiff had numerous timely payment and servicing issues, resulting in a foreclosure, set aside and, finally a loan modification agreement, the terms of which remain applicable to Plaintiff's loan and payments today.  (Doc. 20).  The Court provided more extensive factual background in an earlier Order.  (Doc. 61).  The present Motions concern the servicing activities occurring after October 31, 2018, when servicing authority was transferred to Fay (Doc. 20 at ¶55) in anticipation of the ownership of Plaintiff's loan being transferred to Citibank on September 9, 2019.  (*Id.* at ¶56).

## III.   STATEMENT OF FACTS

At the time Fay began servicing Plaintiff's mortgage, it is undisputed, Plaintiff was current on his principal and interest payments.  (Doc. 56-6 at 7; Doc. 56 at 3; Doc. 60-6; Doc. 60-7). Plaintiff remitted a payment, for $604.08, on November 14, immediately following various phone calls from Fay to him.  (Doc. 66-18 at 11; Doc. 60-8).  Sometime shortly thereafter, a statement dated November 10, 2018, with a due date of December 1, 2018, arrived in the mail.  (Doc. 60-4).  The statement did not reflect the November payment as paid, since the statement was issued

2

on November 10, before the November 14 payment posted. (Doc. 60-4). Instead, the statement listed the "Total Amount Due" as $1208.16, or an amount equal to two mortgage payments. *Id.* The statement also contained a line item for "Funds Applied," without further explanation, of $635.00 on November 6, 2018. *Id.* In a Notice of Error to Fay, Plaintiff questioned the accuracy of the statement:

> I received your Statement dated 11/20/18 and I believe it to be incorrect. It is being stated that I made a payment of $635.00 when I actually made a payment of $604.08 on the 6th over the phone…this was the amount I was told to pay.

(Doc. 56-10; requoted in Doc. 56-16). Fay, in its Response, clarified that the November 6 "Funds Applied" were actually escrow funds transferred from Caliber to Fay since it inherited the loan from Caliber:

> When the loan transferred to Fay, the prior servicer's records showed your account had an escrow balance of $635.00; this was applied to the escrow account on November 6, 2018.

(Doc. 66-10). Although Plaintiff, as evidenced by his Notice of Error, believed the $604 payment was made on November 6, Fay again provides clarity:

> The payment remitted to Fay on November 14, 2018, in the amount of $604.08, was applied to your November 1, 2018 monthly mortgage payment. We find no error regarding the billing statement dated November 10, 2018.

(Doc. 66-10).

The confusion over the interpretation of the November 10 statement blossomed into a long-running dispute between Plaintiff and Fay. Throughout the latter part of 2018 and the first quarter of 2019, Plaintiff attempted to explain to Fay that he was exempt from paying property taxes. (Doc. 66-18). Despite this exemption and Plaintiff's protestations, it is undisputed that Fay continued to collect $35.50 a month for property taxes Plaintiff did not owe. (Doc. 56-18).

Throughout this time, based on his belief that property taxes were not owed, Plaintiff reduced his monthly payments and, in turn, was charged late fees. In an effort to resolve these ongoing disputes, Plaintiff exercised his rights under RESPA and submitted three Notices of Error ("NOE") to Fay. (Doc. 56-16). While the existence of the first two NOEs are in dispute, the third NOE was received and responded to on March 11, 2019. (Doc. 56-14). Unsatisfied with the answer, Plaintiff filed this action.

It is now undisputed that property taxes were not owed. However, it is also undisputed that the amounts collected for property taxes were never disbursed to the Baldwin County tax assessor, but rather were applied to offset deficiencies in Plaintiff's property insurance escrow account. (Doc. 56-8).

### IV. STANDARD OF REVIEW

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. . . . If, however, the movant carries the initial summary judgment burden . . ., responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal citation omitted). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden

of proof," the moving party is entitled to summary judgment. *Ford v. Jolly Shipping, Inc.*, 2018 U.S. Dist. LEXIS 177695, *4 (S.D. Ala. Oct. 15, 2018) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)).  In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant . . ." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  However, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:  . . . consider the fact undisputed for purposes of the motion . . ." Fed. R. Civ. P. 56(e)(2).

**V.      DISCUSSION**

    **A.      COUNT II – Violation of the Fair Debt Collection Practices Act**

Plaintiff and Defendant Fay filed cross summary judgment motions on Count II of the Complaint.  (Docs. 57, 59).  Plaintiff alleges Fay has violated the FDCPA by "attempting to collect amounts not owing and not authorized by any contract" (15 USC 1692f(1))[2] and "attempting to collect a debt by use of false, deceptive or misleading statements aimed at coercing the Plaintiff to pay the debt" (15 USC 1692e).  "The FDCPA was enacted, among other reasons, 'to eliminate abusive debt collection practices by debt collectors[.]'" *Bandy v. Midland Funding, LLC*, 2013 U.S. Dist. LEXIS 7983, *12 (S.D. Ala. Jan. 18, 2013) (citing 15 U.S.C.A. § 1692(e)).  To state a claim under the FDCPA, a plaintiff must plead:  "(1) the plaintiff has been the object of collection activity

---

[2] **§ 1692f. Unfair practices**.  A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C.A. § 1692f (West)

5

arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1235 (S.D. Fla. 2015) (citing *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (internal quotation marks and citation omitted)).

The parties dispute whether Fay is a "debt collector," an essential element Plaintiff must prove to succeed on its FDCPA claim. "[W]hether an individual or entity is a 'debt collector' is determinative of liability under the FDCPA." *McWhorter v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 122045, *4 (S.D. Ala. Aug. 3 2017) (citing *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579, 581-82 (11th Cir. 2012)). "The Act defines 'debt collector' to mean '[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) (quoting 15 U.S.C. § 1692a (6)). The definition of "debt collector" excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.'" *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1236 (S.D. Fla. 2015) (quoting 15 U.S.C. § 1692a (6)(F)(iii)); *see also McWhorter, LLC*, 2017 U.S. Dist. LEXIS 122045, *7 (same) ("Under the FDCPA, a person who acquires servicing rights to a debt is not a debt collector for purposes of that debt if the debt 'was not in default at the time it was obtained.'").

6

Money owed under a promissory note which is secured by the debtor's home is a debt within the meaning of the FDCPA.  *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012).  However, mortgage service companies are not debt collectors, subject to the FDCPA, "'so long as the debts were not in default when taken for servicing.'" *Bohringer*, 141 F. Supp. 3d at 1236 (quoting *Davidson*, 797 F.3d 1309, n.4 (quoting S. Rep. No. 95-382, at 3-4)).  Thus, for a mortgage servicer to be considered a debt collector, the mortgage must be in default at the time it was transferred to the servicer for collection.  In the alternative, a mortgage is deemed in default for purposes of the FDCPA if the mortgage servicer treats the mortgage as being in default at the time of transfer.  "Multiple courts, including binding Circuit authority, have opined that a debt is in default under FDCPA if the servicer treats it as such, regardless of whether any debt was validly owed or not. It is the servicer's treatment of the debt, rather than the debt's actual status, that matters." *Church v. Accretive Health, Inc.,* 2015 U.S. Dist. LEXIS 158476, at *51 n.19.  *See also, Davidson*, 797 F.3d at 1312 n.2 (opining that it is of no consequence whether debt was actually in default, and where defendant "has treated [plaintiff's] debt as a debt that was in default at the time it was acquired ... we will do the same"); *Bohringer*, 2015 U.S. Dist. LEXIS 147092, at *6 ("Even if a debt is not actually in default at the time its servicing rights are transferred to a loan servicer, the debt is nevertheless 'in default' under the FDCPA if the servicer treats the debt as in default at the time of transfer.") (citations omitted).

As discussed, it is undisputed that at the time Fay obtained the servicing rights to Plaintiff's mortgage on November 1, 2018, the mortgage was current.  In order to determine whether Fay meets the statutory definition of "debt collector," the threshold question, then, is whether Fay acted as if the debt were in default.  The narrow question on summary judgment is

7

whether there is a genuine issue of material fact as to Fay's treatment of the debt as if it were in default at the time Fay acquired it. *See Accretive Health, Inc.*, 2015 U.S. Dist. LEXIS 158476, *9-10 ("Defendant's Rule 56 Motion hinges on resolution of that singular, narrow legal question.); *see also Bohringer*, 141 F. Supp.3d at 1237 (the questions under the (F)(iii) exclusion is whether the loan was "in default at the time it was obtained by" the servicer or if the servicer treated the debt as in default at the time of transfer).

### 1) The Parties' Arguments

In his Motion, and response to Defendant's Motion, Plaintiff relies heavily on his interpretation of the November 10 statement to argue Fay considered the mortgage in default from the time it took over the loan and, therefore, that Fay was a "debt collector" for the purposes of FDCPA. (Docs. 59, 68). First, Plaintiff contends Fay did not acknowledge the October 2018 payment had been made and asserts the debt Fay was attempting to collect in November was the October 2018 payment. (*Id*.). Plaintiff cites to two portions of his November 10 mortgage statement: 1) the "Activity since Last Statement" section, which does not include the October payment made to Caliber for October; and 2) the "Explanation of Amount Due" section, where there is not yet a November payment recorded. (*See* Docs. 60-4, 59 at 3, and 68 at 2).

In response, Fay asserts there is no evidence to support Plaintiff's theory that Fay regarded the account past due on October 31, 2018, when it accepted transfer of the loan. (Doc. 67 at 5). Rather, Fay submits evidence that the October payment had been made. (Doc. 67, citing to Doc. 60-6). Fay explains Plaintiff's argument is based on a misinterpretation of the November mortgage statement. (Doc. 67 at 5). Specifically, Fay points out that at the time the statement was mailed (November 10, 2018), the November payment had not yet been received,

and, therefore, could not have been noted on the November 10 statement. (Doc. 67, citing to Doc. 60-4). The statement, then, properly noted the outstanding amount due on December 1 included a payment for both November and December, not October and November. (Doc. 60-4).

Again, in response to Defendant's Motion for Summary Judgment on this same topic, Plaintiff contends the statement indicated Plaintiff was behind by one payment when he was not. (Doc. 66 at 8). Plaintiff points to the November 6 servicing notes accompanying Fay's phone call log, which read as follows: "Reason for Courtesy Call Delinquency." (Doc. 66-18 at 12). Plaintiff argues Fay's November 6 phone call to him, which occurred five (5) days after Fay became the servicer on November 1, indicates Fay considered the loan in "default" at the point it assumed the loan. (Doc. 66-18 at 12).

In response, Fay reiterates Plaintiff has misinterpreted the November 10 statement: "[Driggers's] interpretation misses the nuance of timing entirely and assumes that the statement conveys a past due October payment. It does not. The two payments noted in the November 10, 2018 statement are for November and December 2018, not October and November 2018. This statement does not support Driggers's argument that Fay considered his loan past due for October 2018." (Doc. 69 at 6). Despite this explanation, at oral argument, Plaintiff maintained his position: he was current on his mortgage at the time of its transfer, but Fay treated him as if he was in default by billing him for two payments.

**2) <u>Analysis</u>**

The Court does not find Plaintiff's interpretation of the November 10 statement to create a genuine issue of material fact as to whether Fay considered the loan to be in default. Plaintiff

made his November payment on November 14, four days after the statement was mailed. (Doc. 66-18 at 11). The undisputed evidence establishes that the statement, issued before the November 14 payment had been made, properly showed an outstanding balance for two payments (the November payment and the December payment, due December 1). Furthermore, the "delinquency" notation is beside the first call to Plaintiff in the call log. The same phone records also have a "welcome call completed" on November 8, two days after the "courtesy call delinquency" notation. (*Id.* at 12). The "delinquency" notation, viewed in the light most favorable to Plaintiff, is not evidence of Fay's treatment of the mortgage as being in default at the time Fay acquired it.

For all of these reasons, the Court determines Plaintiff has failed to present any genuine issue of material fact on the question of whether Fay considered the loan in default at the time it Fay acquired it. Because Fay is not a "debt collector," there can be no liability for any alleged violations under the FDCPA, and Count II is due to be dismissed as a matter of law.

**B.     COUNT I – RESPA - Defendant's Motion for Summary Judgment**

In Count I, Plaintiff alleges Fay violated 12 U.S.C. §2605(e) ("RESPA") by failing to timely acknowledge and respond to the first two of three "Notices of Errors" and failed to respond adequately to the third NOE sent by the Plaintiff. (Doc. 20). In its summary judgment motion, Fay argues Plaintiff did not meet its burden, demonstrating that the first two NOEs were received by Fay, necessary to trigger a response under RESPA. (Doc. 56 a 7). However, Fay did acknowledge receipt of the third NOE on February 27, 2019, informing Plaintiff of its intent to respond in thirty (30) days. (Doc. 20 at ¶69). Thereafter, Fay sent Plaintiff a qualified written response on March

11, 2019. (Doc. 56-14). At oral argument, Plaintiff conceded the sufficiency of this qualified written response is the remaining claim under RESPA.

Plaintiff contends Fay did not sufficiently respond to the NOE. The facts of the NOE and Fay's response are not in dispute. Plaintiff claims Fay's response did not "properly address" three issues raised in the NOE: (i) a perceived error in how one of the November 2018 payments was applied; (ii) a prospective increase in the monthly payment amount to cover additional insurance costs; and (iii) payment of "nonexistent property taxes." (Doc. 66 at 7; Doc. 69 at 2). Defendant argues the response was adequate and followed the direction provided in 12 U.S.C. § 2605(e)(2) (2010). Under that section, a lender must respond to a qualified written request from a borrower within 60 days of receipt.

Under the law, the lender must:

> . . . after conducting an investigation, provide the borrower with a written explanation or clarification that includes—(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id*. § 2605(e)(2)(B); *see also Bates v. JPMorgan Chase Bank, NA,* 768 F.3d 1126, 1134 (11th Cir. Sept. 30, 2014) (observing that "Although Bates was confused and/or unsatisfied with this answer, the information provided an explanation to Bates as to what happened to her September payment and provided her with contact information for further support. This transparency and facilitation of communication is the goal of RESPA. . ."); *Whittaker v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 151087 (M.D. Fla. Oct. 23, 2014) ("Although Plaintiff did not like the explanation he received from Wells Fargo, Wells Fargo did state why it believed that the action it had taken on Plaintiff's account with regard to application of the insurance proceeds was appropriate and

11

correct. Such an explanation satisfies RESPA. The statute does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons."); *Renfroe v. Nationstar Mortg.,* LLC, 2015 U.S. Dist. LEXIS 16328 (S.D. Ala. Feb. 10, 2015) (quoting *Whittaker*, 2014 U.S. Dist. LEXIS 151087 ("Nationstar is not required to give a response that is desired by or satisfies Plaintiff, but is merely required to 'provide a statement of its reasons,' which Nationstar did.")).

Reviewing Fay's March 11 response to Plaintiff and the payment histories submitted, the Court finds as a matter of law Fay's response was sufficient. The November 6 "funds applied" was a $635 escrow transfer and the November 14 payment in the amount of $604 was applied to the November principal and interest due. These transfers are undisputed and appear on Plaintiff's November and December statements. (Docs. 60-4 and 56-14 at 55). Fay also included documentation explaining how Plaintiff's payment would increase due to the premium increase for homeowner's insurance and an overall escrow shortfall. (Doc. 56-14 at 53, 54). In spite of these documents, and Fay's qualified written response (Doc. 56-14), Plaintiff continues to claim Fay has not explained how the November 2018 payment was misapplied: "The failure to properly apply Driggers's November 2018 payment was an accounting error. Without an explanation or a legible payment history, it would be impossible for Driggers to determine if his payments were applied correctly." (Doc. 66 at 7). Plaintiff's willful disregard of the contents of the response from Fay does not constitute a genuine issue of material fact for trial. Defendant's Motion for Summary Judgment on Count I is **GRANTED**.

### C. COUNT III – Breach of Contract

In Count III of his Complaint, Plaintiff alleges a breach of contract claim against Defendants Fay and Citibank. (Doc. 20). The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (citing *Shaffer v. Regions Fin. Corp.,* 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). A breach of contract claim, of course, requires "the existence of a valid contract binding the parties in the action." *Shedd v. Wells Fargo Home Mortg., Inc.*, 2015 U.S. Dist. LEXIS (S.D. Ala. Oct. 26, 2015) (citing *Webb v. Ocwen Loan Servicing, LLC*, 2012 U.S. Dist. LEXIS 167079 (S.D. Ala. Nov. 26, 2012) (quoting *Poole v. Prince*, 61 So.3d 258, 274 (Ala. 2010)). "The party asserting a breach-of-contract claim must prove <u>every</u> element of that claim; the failure to prove any one element necessarily results in a judgment for the opposing party." *Dupree,* 308 So. 3d at 491 (emphasis in original) *(*citing *Ex parte Steadman*, 812 So. 2d 290, 295 (Ala. 2001)).

**1) Breach of Contract Claim Against Fay**

Plaintiff alleges Fay has a duty because "Citibank discharges its duties and obligations under the subject mortgage and note through the actions of Fay, its mortgage servicing agent at all relevant times." (Doc. 20). In order to prevail on a breach of contract claim, Plaintiff must first establish the existence of a valid contract with Fay. The parties do not dispute the absence of a contract between Plaintiff and Fay. In its motion for summary judgment, Fay points out the absence of a contract. In response, Fay offers up no alternative theory, beyond the allegation that Fay had a duty as Citibank's agent.

At oral argument, Plaintiff conceded Fay is entitled to summary judgment because there is no contract between Plaintiff and Fay. Fay, as the servicer of Plaintiff's mortgage, is under contract with Citibank. It is settled under Alabama law that a mortgage servicer, who does not have a contract with the borrower, cannot be sued for breach of contract. Because Plaintiff does not have a contract with Fay, he has no claim against Fay for breach of contract. *See Blake v. Bank of America, N.A.*, 845 F. Supp 2d 1206, 1211-1213 (M.D. Ala. 2012) (holding that a mortgagor has no standing to sue its mortgagee's servicing company for breach of contract.); *Ocwen Loan Servicing, LLC,* 2012 U.S. Dist. LEXIS 167079 (finding that the lack of a binding contract between the borrower and his mortgage company's servicer prohibited a claim for breach of contract against the servicer).

Summary judgment is **GRANTED** in favor of Fay as to Plaintiff's breach of contract claim.

**2) Breach of Contract Claim against Citibank**

Plaintiff alleges Citibank, through the actions of its servicing agent Fay, has breached the mortgage agreement by failing to apply Plaintiff's payments correctly, charged late fees and other default-related charges in the absence of any delinquency and contrary to the provisions of the mortgage and note. (Doc. 20).

There is no dispute a valid contract, comprised of the Mortgage, Note, Assignment to Citibank, and the Loan Modification Agreement, between Citibank and Plaintiff. However, Plaintiff has not, and cannot, produce any evidence of damage caused by Citibank's' alleged breach of the contract. "The amount of damages in a breach-of-contract action is generally the 'sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.'" *Dupree,* 308 So. 3d at 491 (internal citations omitted).

Plaintiff alleges Citibank "improperly applied payments" and "charged late fees and other default-related charges in the absence of any delinquency and contrary to the provisions of the mortgage and note." (Doc. 20). Citibank moves for summary judgment noting Plaintiff offered no evidence "to support the contention that the charges at issue are incorrect as to type or sum." (Doc. 56 at 14). Plaintiff, in its response, clarified that the "charges at issue" were the improper collection of property taxes, amounting to approximately $35/month, collected as part of his escrow payment. (Doc. 66). Plaintiff is exempt from property taxes by the local taxing authority. Citibank argues, this is a new allegation, which cannot be raised at the summary judgment stage.

In its Reply, Citibank explained that while these property taxes were not owed, Citibank, acting by and through Fay, once the mistake was realized, never disbursed the funds to the taxing authority and rather applied them to other undisputed escrow deficiencies. (Doc. 69). Fay has produced documents establishing an escrow shortage on Plaintiff's account for insurance. (Doc. 56-8). The total amount collected for property taxes, which had not yet been remitted to the taxing authorities, was used to offset this shortage. This credit resulted in the reduction of the amount due from the Plaintiff and Plaintiff was not damaged.

Plaintiff also alleges he was damaged by the collection of late fees. Plaintiff, as a result of his dispute over the property taxes and the amount of the force placed insurance, decided to unilaterally pay less than the amount due each month. As a result, late fees were charged. Citibank argued these late fees were properly charged under the terms of the Mortgage. Plaintiff has presented no evidence to the contrary.

Summary judgment is **GRANTED** in favor of Citibank as to Plaintiff's breach of contract claim.

## CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED.**  Plaintiff's Cross Motion for Summary Judgment is **DENIED.**

**DONE and ORDERED** this 15th day of July, 2021.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE
